[Crim. No. 2758. First Dist., Div. Two. Apr. 23, 1952.]

THE PEOPLE, Respondent, v. HENRY NORRED, Appellant.

Henry Norred in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

GOODELL, J.—Two amended informations were filed against appellant, each accusing him of a violation of section 288 Penal Code and alleging a prior conviction under section 288a and another under section 476a Penal Code. Each information related to a different child. Appellant pleaded not guilty to each charge but admitted the prior felony convictions. The cases were consolidated and tried together before a jury. The court appointed the public defender who represented the defendant throughout the trial, but does not represent him on this appeal. The appeal is taken from the judgment of conviction on both counts and from the order denying a new trial.

The principal witness was M. K., an 8½-year-old girl, who is named in one information as the victim of the lewd conduct. She described the acts and named the defendant as the man who committed them. She testified also to the acts charged in the other information, which relates to one L. G., a 5-year-old girl, since both offenses were committed in the

presence of both girls.  L. G. also testified respecting appellant's conduct with the older girl, which she witnessed.

M. K. lived with her father and mother in an upper flat in San Francisco.  The defendant had roomed and boarded with that family but had moved to the lower flat in the same building.  On the afternoon of Sunday, December 24, 1950, the 5-year-old girl with her father, mother and two brothers drove over from their home in Marin City to visit the K. family.  While there the two girls and the brothers of the younger girl were invited downstairs to look at the television.  The women members of the family in the lower flat had gone to the country for Christmas.  The four children watched the television for a while and then the boys left.  After they had gone appellant, according to the testimony, took the two girls into a room in the rear of the flat, where the offenses were committed.

An adult witness, B. R., testified that one day, while she was in a neighborhood tavern, appellant, whom she knew from former meetings in the same place, made some very incriminating, but outspoken, statements to her (not necessary to be repeated herein) about himself and an 8-year-old girl.  She testified, further, that a week or two later appellant came into the same place with a girl and said to the witness: ''This is the little girl I was telling you about.''  After he bought the girl a coke they left, but returned shortly, at which time the girl had a lot of pencils and a sack of candy with her.  The next time she saw the girl was on Sunday, February 11, 1951, in the same tavern, when the girl was with her father who said ''I want you to meet my little daughter.''  The witness told the father that she had seen her before, in the same place ''with that fellow called Hank who was supposed to be the uncle to the little girl.''  The witness tried to engage the girl in conversation, and finally asked her if Hank had ever hurt her, to which she replied ''no, no, no.''  They left and in 15 or 20 minutes the father returned and told the witness ''You are right, my little girl confessed everything.  What you said was true . . . It wasn't only my daughter.''  The witness testified that then ''I grabbed him by the collar, . . . I said, 'Listen, if you don't do anything about this I will see that I will do it.' ''  That same evening the father took the case to the police, and appellant was arrested.

When the girl's father was under cross-examination he was asked where he first learned of these offenses and he

related the Sunday afternoon episode just discussed, thereby corroborating B. R.'s testimony in part at least.

The defendant did not take the stand. The testimony of both girls therefore is uncontradicted and the testimony of B. R. with respect to appellant's unusual statements to her is likewise uncontradicted. For these reasons the case is in no respect a close or doubtful one.

As appellant has written his own briefs, his points are not as well presented as they might be. The reporter's transcript has been carefully examined and we have grouped as best we could the numerous points in his briefs.

■ The appellant argues that the 5-year-old girl should not have been permitted to testify. Section 1880 Code of Civil Procedure provides: "The following persons cannot be witnesses: . . . 2. Children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." Both girls before being sworn were asked by the judge the usual questions as to their church and school attendance, their knowledge of God, the obligation to tell the truth and the consequences of telling an untruth. The judge was satisfied that each was qualified, which was a matter within his discretion (*People* v. *Morcumb,* 28 Cal.App.2d 465, 467 [82 P.2d 714], and cases cited.) ■ Appellant directs his attack to the qualification of the younger of the two girls. During her cross-examination she was closely questioned with respect to her identification of the defendant. At the trial she definitely identified him. Several weeks earlier at the preliminary examination she had not been definite in her identification, and her testimony then given was read to her at some length at the trial. She then admitted that she "didn't know who he was the other time" and the prosecuting attorney twice admitted frankly that "she didn't know the last time." In view of the extent to which the court permitted the defense to go in confronting the girl with her earlier testimony and the prosecution's repeated concessions that the identification had not been made *by this witness* at the preliminary examination, there was no error in the court's rulings sustaining objections to several repetitious questions on the ground that they had been asked and answered, or in sustaining objections to certain other questions as not proper impeachment. The defense was permitted to get before the jury a full and fair picture of the girl's testimony on identification at the earlier hearing, for whatever

it might have been worth. At the trial, defense counsel asked her "Do you know him now when you see him?" and she answered "yes" and indicated the defendant. Apparently the jury was satisfied with her identification then, although it had been made perfectly clear to them that she had not identified him at the preliminary hearing.

Appellant attacks the conduct of the prosecuting attorney on the ground that the 5-year-old girl had been coached, and argues at great length and cites numerous cases relating to the obligation of a prosecuting officer to conduct his case with fairness to the defendant. There is nothing in this record to form any solid foundation for such an attack, and there is no need to discuss the many cases cited by appellant. It must be remembered, over and above what has just been said, that the testimony of the 5-year-old girl, given, as it was in much the same way that any 5-year-old child would be expected to give it, was corroborated by the older girl and was not denied by the defendant. There is no misconduct or error shown by this record in connection with the 5-year-old girl's testimony.

The defense asked a number of questions of the father of the 8½-year-old girl designed to show that he was unfriendly to the defendant. The court allowed ample leeway in this inquiry, but did sustain objections to questions asked of the father, and of other witnesses as well, with respect to quarrels and discord within the household. For instance, the father was asked "You say that you were on 9th and Howard. Isn't it a fact that Mr. Norred came up to you and your wife and you were having an argument there on the corner?" An objection was sustained, and, of course, properly so. One of the occupants of the lower flat was asked: "And during the time they had lived there did you have occasion to hear arguments up stairs?" to which an objection was sustained. The same witness was then asked "Did you ever see the K——s fight while they were there?" to which an objection was sustained, the court remarking "We are not trying the domestic relations of the K——s in this proceeding." She was then asked "Did the mother-in-law of Mr. K—— tell you that she had been struck with an iron?" to which an objection was sustained, the court remarking "Why, it wouldn't have been even admissible if Mr. K—— were on trial, it would have been complete hearsay . . ." It is not necessary to prolong the discussion of these objections.

The court's remark that the domestic relations of the

family were not on trial said everything that need be said with respect to all this line of questioning.

It is pointed out by appellant that the chambers of the judge, the office of the district attorney, and that of the public defender are close together at the juvenile court and "that it is the belief of the appellant from the timidness of the public defender that he was afraid to assert his rights fearing later rebukes from the court and assistant district attorney." The record in this case shows no evidence whatever of any timidity of the public defender; it shows a persistent assertiveness on his part, so much so that the court in several instances admonished him rather sharply. The assistant public defender who was assigned to this case was no novice but an experienced trial lawyer and the transcript supplies no basis whatever for appellant's criticism of his trial counsel.

Appellant, writing his own brief, presents a number of other points, none of which would be raised by an attorney because of a foreknowledge of their futility in any appellate court. He specifies a score or more of adverse rulings, using the simple method of asserting that the court erred in sustaining (or overruling) this or that objection, followed by a transcript reference, and leaving the rest to this court. Needless to say these numerous contentions when so presented cannot be discussed in any detail within reasonable limits of time and space. However, an examination of the record has been made in each instance.

The questions were on wholly immaterial points and their subject matter may be grouped as follows: (a) the alleged family discord already discussed; (b) the claimed hostility to appellant of the older girl's father *before* the commission of the offenses, as bearing on his motive in causing appellant's arrest *after learning of appellant's offense against his own daughter*; (c) the time of day when the older girl was taken to the district attorney's office; (d) the time of day or night when K telephoned to the mother of the younger girl after appellant's first arrest; (e) the time within the 6 months' period preceding the offenses, during which appellant on the one hand, and K on the other, were employed or unemployed; (f) the frequency with which K had seen the witness B. R. preceding the offenses; how well he knew her; her condition of sobriety at various times, including February 11, 1951, and her reputation in the neighborhood; (g) K's efforts looking to appellant's arrest on the second complaint after he had

been released on bail on the first charge—the argument being that appellant could not adequately prepare his defense while in jail.

The question before the jury, after all, was whether these lewd and lascivious acts had been committed, and if so whether defendant committed them. As relevant or material to those issues it will be seen at a glance that none of the foregoing matters could have had any possible materiality or probative value.

■ The wife of the owner of the tavern was asked a series of questions by defense counsel which the latter claimed were designed to develop that the witness B. R. did not have a good reputation *in and around the café*; "whether or not she is a truthful person," and "whether or not she is a person who lies" and objections were sustained for want of proper foundation. The rulings were correct.

Appellant argues that "A question of law authorizing the appellate court to set aside a conviction is presented where the evidence is inherently improbable." He does not point out how or why the evidence is inherently improbable. Appellant did not contradict the testimony of the two girls. Their testimony presents an extremely sordid picture, but there is nothing improbable about it.

Appellant makes the unusual argument that there was no evidence to show a violation of section 288 on either count, while admitting that "there was testimony of the appellant allegedly violating section 288a P. C." The uncontradicted testimony shows a violation of both sections as to each child.

"Appellant further urges" to quote his brief, "that the court should have admonished the jury to regard with caution the testimony of the two complaining witnesses, one age 5, the other 8½. That in neglecting to do so the appellant was deprived of a fair and impartial trial." The court gave the following instruction: "However, a charge such as that made against the defendant in each of these cases is one which, generally speaking, is easily made, and, once made, is difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution."

■ Appellant complains "that the trial judge, on every opportunity, came to the aid of the prosecution and took over the examining of the witnesses for him on direct examination."

Instances are cited from the preliminary examination and from the trial itself. Two of the instances at the trial were in that part of the direct examination of the older girl which dealt directly with the intimate details of the offense and the judge saw fit to ask the embarrassing questions himself, and we think his discretion was properly exercised in so doing. Two other instances were during the cross-examination of the younger girl, while she was being quesitoned about watching the television, and was apparently hesitant in giving her answers. The last instance was while the mother of the younger girl was being questioned on a collateral matter. In none of these instances did appellant's counsel make any objection or assignment.

Finally it is claimed that the court erred in reading to the jury more of the testimony than had been requested. The jury returned into court and asked that the testimony of the older girl be read. After that had been done the judge inquired whether they wanted the testimony of the younger girl as well, and the foreman answered in the affirmative and it was read. There was no error or misconduct in this procedure.

We find no merit at all in any of the numerous contentions of the appellant. He was accorded a fair trial; he was represented throughout the trial by an experienced lawyer and there was no misconduct on the part of the judge or the prosecuting attorney.

The judgment and order appealed from are affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied May 8, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.