[No. 35877.   Department Two.   April 26, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. LUCILLE THOMPSON, *Appellant.*[*]

*[*]Reported in 370 P. (2d) 964.

*Murray B. Guterson,* for appellant.

*Charles O. Carroll, Frank L. Sullivan,* and *James E. Kennedy,* for respondent.

DONWORTH, J.—This is an appeal from a judgment and sentence entered upon a jury verdict of guilty on three counts charging appellant with accepting the earnings of a common prostitute, which is a felony under the provisions of RCW 9.79.060(5).

The state produced substantial evidence from which the jury could have concluded that appellant had committed the acts charged. She did not take the stand or offer any evidence in her defense. Therefore, we do not find it necessary to discuss the evidence in detail.

The assignments of error are as follows:

"1. The court committed prejudicial error in denying appellant's motion to make more definite statement, requesting the naming of the unnamed common prostitute or prostitutes in each of the three Counts of the Information and requesting that the specific date or dates when earnings were allegedly accepted in Count 2 be set forth.

"2. The court committed prejudicial error in failing to grant appellant's various motions for a continuance of the trial on the basis of the health condition of the appellant.

"3. The court committed prejudicial error in failing to grant appellant's motion for a continuance on the basis of the endorsement of witnesses for the State on the day of trial.

"4. The court committed prejudicial error in refusing to instruct the jury in accordance with appellant's proposed instruction No. 4.

"5. The court committed prejudicial error in failing to grant appellant's motion for a new trial as the procedure followed by the court denied the appellant a fair trial and violated her rights protected under the due process clause of the State and Federal Constitutions."

The arguments relating to these assignments of error will be treated in order.

As to the first assignment, appellant contends that:

"The Trial Court's refusal to grant appellant's motion to make a more definite statement denied the appellant her

right to be informed of the nature and cause of the accusation against her. Count 2 failed to properly apprise the appellant of the charges pending against her and thus denied her the opportunity to properly prepare her defense. Counts 1, 2 and 3, when read together, were so ambiguous and indefinite that a person of common understanding would be unable to know what was intended."

None of the counts in the information named the common prostitute or prostitutes whose earnings the defendant allegedly accepted.

Count 2 alleged that the crime was committed "during the period of time intervening between the 14th day of November, 1959 and the 17th day of May, 1960." Counts 1 and 3 alleged that the crime was committed "on or about" a specific date, namely, the 13th day of November, 1959, for count 1, and the 18th day of May, 1960, for count 3.

The names of Roberta Rodin, Patricia Wilcox, and Sally Jo Petitclerc were endorsed on the information as witnesses for the state. All were called as witnesses at the trial.

■ The crimes were charged substantially in the language of the statute which defines the crime. The information is sufficient to enable the trial court to pass sentence and to afford to appellant the protection of former jeopardy. According to the reasoning of *State v. Larson,* 178 Wash. 227, 34 P. (2d) 455 (1934), the information in this case was sufficient to charge a crime, and to apprise appellant of the nature of the accusation against her.

■ Appellant contends, more specifically, that the general lack of precise dates was a hindrance to any attempt to conduct her defense, and that the additional failure to name the prostitutes involved made an adequate defense almost impossible. The complete answer to this contention is that there could have been no prejudice to appellant in view of the following: On June 23, 1960, almost four months before the trial (which began on October 19, 1960), and about one and one-half months before the filing of the motion to make more definite statement, a preliminary hearing was held in justice court. At that time, the three prostitutes involved, who had been endorsed on the in-

formation as witnesses, testified as to the matters charged in the presence of appellant and her counsel. Hence, appellant and her counsel were aware of the complete nature of the crimes charged, and virtually the exact testimony of the principal witnesses against her, almost four months before she went to trial in superior court. In view of this fact, we cannot say that the trial court erred in concluding that appellant had sufficient knowledge of the crimes charged and sufficient time in which to prepare a defense.

With regard to the second assignment of error, it is contended that appellant was in such ill health at the time of the trial that she was physically and emotionally unable to be of assistance in her own defense, and that she was virtually unaware of the events which were taking place in her presence.

When this matter was first called to the trial court's attention by appellant's counsel, the court questioned appellant (out of the hearing of the jury) to ascertain her capacity to participate in her defense. This was a matter peculiarly within the trial court's discretion. There is here no showing of any abuse of discretion.

Appellant relies primarily on a letter from a doctor to the effect that he would advise postponement of the trial. In addition, there is some indication that appellant was emotionally upset during the proceedings. Neither of these items of evidence is sufficient to clearly establish that appellant was unable to either understand the proceedings or assist in her defense.

The trial judge had the opportunity to observe appellant's demeanor throughout the trial. His conclusions are summarized in his comment at the conclusion of the trial:

" . . . I have observed the defendant. I think that she is competent. She understands what is going on, because she evidenced that when the witnesses would get on the stand. She knew what was happening. She particularly knew when her daughter got on the stand; the unfortunate position she was in, and that of her daughter she evidenced to me. . . ."

The trial court's ruling with regard to matters peculiarly within its province to ascertain will not be disturbed where, as here, no abuse of discretion has been shown.

Regarding assignment of error No. 3, it is claimed that appellant was in fact,

". . . surprised by the late endorsement of witnesses, that the surprise was not occasioned by a lack of diligence on the part of appellant or appellant's counsel and that the surprise prevented the appellant from making that type of investigation which the character of the witnesses and nature of the testimony demanded. The information supplied by the State with respect to the whereabouts of the witnesses in advance of trial was, if not misleading, not informative. The time allocated by the court on the day of trial for examination of the witnesses was inadequate because it failed to provide counsel with adequate opportunity to obtain rebuttal testimony and to make an independent examination of the testimony, character, ability to recall, and veracity of the witnesses, and because it denied counsel an opportunity to examine the witnesses prior to the *voire dire* of the jury."

The applicable statute is RCW 10.37.030, which provides that the prosecuting attorney shall

". . . at the time the case is set for trial . . . file with the clerk a list of the witnesses which he intends to use at the trial and serve a copy of the same upon the defendant. . . . Either party may add such additional names at any time before trial as the court may by order permit, . . ."

The purpose and object of the statute

". . . is to enable the parties to inquire into the habits, character and standing of the witnesses to be offered by the respective parties at the time of trial. Another reason is to permit the jury to be questioned on their *voir dire* examination concerning their knowledge of, and acquaintance with, the various witnesses who are to testify." *State v. Leosis*, 160 Wash. 176, 181, 294 Pac. 1115 (1931).

The relevant facts regarding this alleged error are stated in appellant's brief as follows:

"On October 13, 1960, the State served upon counsel for appellant a Notice of Endorsement of Witnesses. . . .

The State indicated in the Notice an intention to move to endorse upon the Information five additional witnesses; namely, Elizabeth Ann Wood, Marie Adams, Lucille Bates, W. E. Henaby, and Karl Meyer, all on the morning of trial, October 19, 1960. . . .

"On the morning of October 19, 1960, the Court, in Chambers, entertained the motion of the State to endorse the witnesses. . . . At this time, counsel for appellant stated that he had been unable to contact any of the female witnesses since receipt of notice that the State was going to move to endorse them. . . . Counsel requested a continuance on this ground, and also because of the health condition of the defendant and the failure to supply a Bill of Particulars to the Information. The Motion for Continuance was denied and the State's Motion to endorse the additional witnesses was granted, subject to the condition that counsel would have an opportunity to talk with them for a few minutes during recess. . . . The jury was then empaneled. . . ."

█ The circumstances described above show compliance with the express terms of the statute. Nevertheless, appellant contends that it is reversible error to fail to grant a continuance in such a case when such a refusal frustrates the purpose and object of the statute, and results in prejudice to the party who requested the continuance.

The terms of the statute had been violated in each of the cases cited by appellant in support of this contention.[1]

Furthermore, the cited cases held that compliance with the statute is not mandatory, and that, in order to constitute grounds for reversal, such a failure to comply must result in either an abuse of discretion by the trial judge or some substantial injury to the defendant.

In this case, not only did the prosecution comply with the letter of the statute, but there has been no showing that there was either an abuse of discretion by the trial court or a substantial injury to appellant. It has not been demonstrated that further investigation by appellant's counsel

---

[1]*State v. Hoggatt,* 38 Wn. (2d) 932, 234 P. (2d) 495 (1951); *State v. Willis,* 37 Wn. (2d) 274, 223 P. (2d) 453 (1950); *State v. Leosis,* 160 Wash. 176, 294 Pac. 1115 (1931); and *State v. McCaskey,* 97 Wash. 401, 166 Pac. 1163 (1917).

could have resulted in the impeachment of the characters of the state's witnesses more completely than did their own admissions. Nor has it been demonstrated that the *voir dire* examination of the jury might have had a different result in this case, if appellant's counsel had had an opportunity to examine the new witnesses before the jury was selected. In fact, on October 13, 1960, six days before the commencement of the trial, appellant's counsel was advised generally what each of these witnesses would testify to.

In view of the foregoing facts, we must conclude that there is no merit in appellant's assignment of error No. 3.

In assignment of error No. 4, appellant contends that the court should have given the following proposed instruction:

"Considering the credibility of the testimony in this case, you are instructed that you may consider evidence of sexual immorality in determining what weight, if any, you shall give to the testimony of those witnesses who have testified to a general history of such immorality."

In the instant case, it was a necessary element of the state's case to prove that the female witnesses in question had practiced prostitution. Appellant's counsel was allowed to cross-examine them extensively. The jury members were told, in instruction No. 16, that they could consider any facts or circumstances arising from the evidence ". . . which appeals to your judgment as in anywise affecting the credibility of such witness . . . ."

The instruction requested here was unnecessary, in addition to the fact that to give it would have been improper. Although the members of the jury may attach what significance they think proper to any evidence in the case, the law does not recognize any necessary connection between a witness' veracity and his sexual immorality. See *State v. Linton,* 36 Wn. (2d) 67, 91, 216 P. (2d) 761 (1950). Furthermore, to have given the proposed instruction in this case might have seemed to the jury to be a suggestion that they discount the testimony of certain witnesses. As such, the instruction would have had the effect of a comment on the evidence.

There is no merit in assignment of error No. 4.

As to the fifth assignment of error, appellant contends that:

". . . even if no one of the four Assignments of Error considered separately is sufficient to require a new trial, the cumulative effect of the procedure to which error was assigned, coupled with the trial court's refusal to grant appellant's motion to produce, denied her a fair trial and, as such, violated her rights protected under the Due Process Clause of the State and Federal Constitutions."

Since we approve each of the contested rulings of the trial court, there was no error, much less reversible error, and, therefore, the cumulative effects of the rulings cannot bring about reversible error.

The judgment and sentence of the trial court is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and OTT, JJ., concur.

*Reported in 371 P. (2d) 59.