460 P.2d 651

The STATE of Arizona, Appellee,

v.

Gene Wright ALBE, Appellant.

No. 1 CA–CR 173.

Court of Appeals of Arizona,

Division 1.

Department A.

Nov. 4, 1969.

Rehearing Denied Dec. 8, 1969.

Review Denied Jan. 20, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag and Leonard M. Bell, Asst. Attys. Gen., Phoenix, for appellee.

Dushoff, Sacks & Corcoran, by Robert J. Corcoran, Phoenix, for appellant.

CAMERON, Judge.

Defendant, Gene Wright Albe, was convicted by a jury and adjudged guilty of the crime of attempted burglary of an automobile (§§ 13–108 and 13–302 as amended, A.R.S.) and was sentenced to 90 days in the Maricopa County Jail. (§ 13–110 A.R. S.) Defendant's motion for new trial and motion in arrest of judgment were denied and defendant appeals. We are called upon

to determine whether the trial court erred in:

1. permitting the defendant to be impeached as to matters which occurred approximately two hours before the alleged crime,
2. administering to veniremen, jurors, and all of the witnesses to be sworn an oath which ends, "So help you God!",
3. giving certain instructions relating to character evidence and reasonable doubt, and
4. treating the crime of attempted burglary in the daytime as a misdemeanor.

On Friday, 29 September 1967, the police officers for the City of Phoenix were observing the parking lot of the Phoenix College campus. One officer was observing the parking lot from atop a building with binoculars while the other was waiting with a radio on a street next to the parking lot. At approximately 11:50 a. m. on the 29th of September, the officer atop the building radioed to the officer in the car that someone, later identified as the defendant, was attempting to break into an automobile. The officer, on foot, walked to the spot in the parking lot. He testified that from a distance of approximately 30 feet he saw the defendant with a screwdriver inserted into the window of the automobile. The defendant and another were placed under arrest.

The defendant's explanation was that he was searching for books in his companion's trunk and that the trunk was sticking and required a screwdriver to aid in opening it. He also stated that while he was waiting for his companion to get out of the car with the keys he noticed a "slick-looking Ford Mustang" parked next to them and he was leaning up against the window looking in when arrested.

During the trial the State introduced testimony by the officers over the objection of the defense counsel that earlier between 9:30 a. m. and 10:00 a. m. the officers had seen the defendant driving slowly through the parking lot with 2 others. On cross-examination the defendant testified as follows:

"Q Mr. Albe, what was your schedule on the 29th of September, 1967, at Phoenix College?

"A Schedule of my classes?

"Q Yes.

"A I had a 9:30 class and a 1:00 o'clock class.

"Q Did you attend classes that day? Yes or no, sir.

"A Are you talking about all my classes that day?

"Q The 9:30 class, did you attend that class?

"A Yes.

\* \* \* \* \* \*

"Q What time is it over?

"A Depends on whenever the Professor decides to let it out.

"Q Do you remember what day he let it out?

"A September 29th.

"Q What hour?

"A Well, it was approximately ten or twenty minutes after class began.

"Q So you got out of class that day at approximately 9:50, 10:00?

"A Yes. Somewhere between twenty minutes of ten and approximately five minutes of ten. There isn't a clock in the classroom."

Defendant further testified that he was in the parking lot about 9:50 or 10:00 a. m. His explanation was that his friends drove up as he was nearing the parking lot and that he got into their car and they drove off campus through the parking lot.

The prosecution, over the objection of defense counsel that this was impeachment on a collateral matter, called the defendant's instructor to the stand in rebuttal. The instructor testified that on 29 September 1967 the 9:30 a. m. English class was held and that defendant was not present

and that class was not dismissed until 10:20 a. m. Defendant's counsel vigorously objected to the introduction of this testimony.

## IMPEACHMENT

A criminal defendant may be cross-examined to the same extent and subject to the same rules as any other witness. § 13–163 A.R.S. Arizona is committed to the doctrine of broad cross-examination and allows great latitude in putting questions which seek to impeach the witness. State v. Rothe, 74 Ariz. 382, 249 P.2d 946 (1952), Fuller v. State, 23 Ariz. 489, 205 P. 324 (1922), Garrett v. State, 25 Ariz. 508, 219 P. 593 (1923).

 However, our Supreme Court has stated that a witness whether it be the defendant or otherwise may not be impeached by the showing of specific acts of misconduct not sustained by conviction. State v. Harris, 73 Ariz. 138, 238 P.2d 957 (1951), State v. Johnson, 94 Ariz. 303, 383 P.2d 862 (1963). This is true because of the prejudicial effect the specific bad acts have on the jury's reliance upon the veracity of the witness over and above what impeachment would provide. This rule does not apply when the act is not a "bad act" within the meaning of the rule. This Court has stated:

> "In Arizona, neither suicide nor a threat to commit suicide is a crime rendering evidence thereof inadmissible under the rule of State v. Harris, supra. In addition, evidence of the prior threat by defendant to commit suicide could only have been admitted if sufficiently related to the act for which defendant was charged so as to complete the story of the crime. The exception to the general rule known as 'completing the story of the crime' has often been labeled 'res gestae.' * * *" State v. Willits, 2 Ariz.App. 443, 444, 445, 409 P.2d 727, 728, 729 (1966).

We do not believe the fact of cutting class is sufficiently "bad" so as to prejudice the jury in the determination of innocence or guilt, but even if this was a "bad act" with-

in the rule we believe the "complete story doctrine" would apply. Testimony covering the presence and activities of the defendant on the morning of the offense is material to give the jury a complete picture as to time and place and is necessary or helpful to an understanding of the conduct of the defendant. Although discussing other criminal acts which are not the case herein we believe the following by the Arizona Supreme Court to be dispositive:

> "Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. (citations omitted) This principle that the complete story of the crime may be shown even though it reveals other crimes has often been termed 'res gestae'. (citations omitted) Udall has criticized the use of this term as 'meaningless and confusing.' To help unconfound this confusion, we choose to refer to this as the 'complete story' principle, rather than 'res gestae'." State v. Villavicencio, 95 Ariz. 199, 201, 388 P.2d 245, 246 (1964).

## GIVING OF OATH

 The appellant contends that the oath taken by the jury, defendant, and witnesses ending with the phrase "So help you God", is contrary to the United States and state constitutions and is reversible error.

The Arizona Constitution, A.R.S., states in part:

> "* * * No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony." Arizona Constitution, Art. 2, § 12.

And:

> "The mode of administering an oath, or affirmation, shall be such as shall be

most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered." Arizona Constitution, Art. 2, § 7.

And our statutes state:

"An oath or affirmation shall be administered in a manner which will best awaken the conscience and impress the mind of the person taking the oath or affirmation, and it shall be taken upon the penalty of perjury." § 12–2221, subsec. A, A.R.S.

Our Rules of Civil Procedure provide as follows:

"Affirmation in lieu of oath. Whenever under these Rules an oath is required to be taken, a solemn affirmation may be accepted in lieu thereof." Rule 43(b), Rules of Civil Procedure, 16 A.R.S.

The veniremen were given the following oath upon voir dire:

"You and each of you do solemnly swear that you will well and truly answer all questions touching on your qualifications to serve as a trial juror in the cause now on trial. So help you God!"

And after they were selected the following oath was given the jury at the time of impaneling:

" 'You and each of you do solemnly swear that you will well and truly try the issues now on trial and a true verdict render. So help you God!' "

The witnesses were given the following oath before they testified:

"You do solemnly swear the testimony that you are about to give to be the truth, the whole truth, and nothing but the truth. So help you God!"

It is the contention of the attorney for the defendant that the oaths given to the jury and to the witnesses is an unconstitutional abridgement of the defendant's rights because they violate the establishment of religion clause of the 1st Amendment of the United States Constitution which is applicable to the States by virtue of the 14th Amendment and the religious qualification clause of the Arizona Constitution. He further asserts that a new trial must be granted to the defendant in which the objectionable oaths are omitted. Appellant cites several cases to this Court in support of his position, but we believe the most pertinent to be Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) and Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965). Both of these cases considered the Maryland Constitution Declaration of Rights, arts. 36, 37, which provided that no person should be deemed incompetent as a juror on account of religious belief "provided, he believes in the existence of God". In Torcaso v. Watkins, supra, the Maryland Supreme Court upheld the refusal to grant a commission of notary public to a man who refused to take an oath that he believed in the existence of God. The Supreme Court of the United States reversed, holding that the Maryland constitutional requirement invaded the appointee's freedom of belief in religion and could not be enforced against him. In Schowgurow v. State, supra, the defendant was a Buddist who did not believe in the existence of God. The Court stated:

"We find the inevitable result of the Supreme Court's decision in Torcaso to be that the exclusion of persons from jury service because of their lack of belief in a Supreme Being is in violation of the Federal Constitution. We can see no difference, under the Federal Constitution, in the position of a defendant who is a member of a class excluded from the jury for lack of belief in God from that of a defendant tried by a jury from which members of his race have been excluded because of their race." Schowgurow v. State, 240 Md. 121, 213 A.2d 475, 480 (1965).

The Arizona Constitution and statutory authority on this matter do not preclude a person from serving on the jury because he does not believe in the existence of God, but on the contrary specifically allow such a person to serve. They may take an oath to God or they may affirm as their con-

sciences dictate. Under the circumstances we can see no error nor any prejudice to defendant in the form of oath as followed in the trial court. We do not believe that the fact a person may be reticent to assert his right to affirm or that a jury might be somewhat suspicious, if indeed they would be, of a person who desired to affirm (rather than take an oath) indicates that the defendant has been prejudiced in any way. The purpose of an oath is to impress upon the person taking it that there is some duty or compulsion to tell the truth whether this be under the penalty of perjury, or in the case of a religious man, retribution from a supreme being. The cautious or fearful witness is not necessarily a poor witness, but on the contrary may well be more accurate in testifying than one who has no concern for the consequences of loose or careless testimony. We find no prejudice to defendant in the form of the oaths.

## THE INSTRUCTIONS

◼ At the settling of the instructions, the defendant objected to the giving of two instructions based upon the Maricopa County Jury Instructions (MARJI)—Number 204 (burden of proof) and 225 (evidence of good reputation)—and offered instructions in their place. The court overruled the objections. As to Instruction Number 225 which reads as follows we find no error:

"The defendant has introduced evidence of his good reputation in the community. Such evidence may indicate to you that it is improbable that a person of good reputation would commit the crime charged.

"Evidence of good reputation may alone create a reasonable doubt of defendant's guilt, although without it the other evidence would be convincing. Evidence of good reputation, however, should not constitute an excuse to acquit the defendant, if you are convinced beyond a reasonable doubt that defendant is guilty of the crime charged."

◼ Over defendant's objections the trial court gave that portion of MARJI Number 204 which reads as follows:

"A defendant in a criminal case is presumed by law to be innocent. The law does not require a defendant to prove his innocence or to produce any evidence.

"The burden of proving the defendant guilty beyond a reasonable doubt rests upon the State. This burden never shifts throughout the trial. The term reasonable doubt means a doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt for which a reason can be given, arising from an impartial consideration of the evidence or lack of evidence. It means a doubt that would cause a reasonable man to pause or hesitate when called upon to act upon the most important affairs of life."

The last paragraph of MARJI Number 204 which reads as follows was omitted:

"If, after consideration of all of the evidence, you are convinced of the guilt of the defendant, then I instruct you that you are satisfied beyond a reasonable doubt. If, on the other hand, you are not convinced of the guilt of the defendant, then I instruct you that you are not satisfied beyond a a reasonable doubt."

This last paragraph was the subject of a recent opinion of the Arizona Supreme Court which stated:

"Although defendant failed to object to the above instruction, he now argues that the last paragraph improperly states the law. We have often ruled that matters not objected to at trial will not be considered by this court on appeal. The trial court must be given an opportunity to correct asserted errors before we will listen to the plea that injustice has been done. State v. Hays, 100 Ariz. 371, 414 P.2d 745. We need not decide whether, upon proper objection, it would be reversible error not to strike the last paragraph of this instruction. We merely hold that when read together with the

preceding paragraphs, which undoubtedly define reasonable doubt in traditionally acceptable terms, it is not so misleading as to constitute fundamental error." State v. Mays, Ariz., 459 P.2d 307 (1969). (Filed 2 October 1969).

Later in the instructions the trial court in the instant case stated:

"Under the evidence in this case and the instructions which have been given to you, if you find beyond a reasonable doubt that the defendant committed the crime charged in the Information, then you should find the defendant guilty. If you do not find beyond a reasonable doubt that the crime charged in the Information was committed by the defendant, then you should find the defendant not guilty."

This statement we believe is a good substitute for the last paragraph of MARJI 204 which the Arizona Supreme Court has indicated may be reversible but not fundamental error. The rest of the instruction not being objected to we need not consider the defendant's assertion of error for the first time on appeal. State v. Mays, supra.

## WAS THE SENTENCING PROPER?

■ Defendant was accused and adjudged guilty of attempted burglary from an auto and the facts indicated that the crime was committed in the daytime. § 13–302, subsec. B, as amended, A.R.S., states as follows:

"* * * Burglary committed in the daytime is burglary of the second degree, punishable by imprisonment in the state prison for not to exceed five years."

§ 13–110 reads in part as follows:

"§ 13–110. Punishment for attempt when not otherwise prescribed

"A person who attempts to commit a crime shall be punished, where no provision is made by law for the punishment of such attempt, as follows:

"1. If the offense so attempted is punishable by imprisonment in the state prison for *five years or more* or by imprisonment in the county jail, by imprisonment in the state prison, or in a county jail, as the case may be, for a term not exceeding one half the longest term of imprisonment prescribed upon conviction of the offense so attempted.

"2. If the offense so attempted is punishable by imprisonment in the state prison for *any term less than five years,* by imprisonment in the county jail for not more than six months." (emphasis ours)

We had this question before us in State v. May, 1 Ariz.App. 452, 404 P.2d 718 (1965) and stated:

"The question presented by the trial court must be answered as follows: the limits of the sentence that may be imposed upon a conviction of attempted burglary, second degree, is by imprisonment for a period of not more than two and one-half years; the place where the sentence is to be served depends upon the sentence imposed by the trial court, to wit: if the sentence is such that the offense is a felony, then the sentence would be served in the state prison; if the sentence is that of a misdemeanor, then the sentence would be served in the county jail." State v. May, supra, at page 455, 404 P.2d at page 721.

Later we stated in a case in which the defendant was convicted of the crime of attempted grand theft:

"* * * And in construing a conviction of attempted burglary, second degree, this Court has held that the crime was a felony rather than a misdemeanor. State v. May, 1 Ariz.App. 452, 404 P.2d 718 (1965). We therefore hold in the instant case that a charge of attempted grand theft under our statute is a felony rather than a misdemeanor." State v. Nestor & Wady, 9 Ariz.App. 79, 80, 449 P.2d 315, 316 (1969).

We also stated:

" * * * The crime of attempted burglary in the second degree is not by definition a felony. Attempted burglary can be either a misdemeanor or a felony, depending on the sentence imposed. * * *" State v. Amey, 7 Ariz.App. 59, 62, 436 P.2d 153, 156 (1968).

We believe that by disregarding the flat statement in Nestor, supra, (that attempted burglary is a felony) these cases may be distinguished and remain harmonious.

In the case of State v. Nestor, supra, the maximum term punishable for grand theft was 10 years. Paragraph 1 of the attempt statute (§ 13–110) would apply, it covering the situation wherein the crime is punishable by "five years or more". We can reaffirm Nestor, supra, that attempted grand theft is a felony.

In the case of attempted burglary, we have a more difficult problem. The punishment for burglary is punishment for "not to exceed five years" (§ 13–302, subsec. B, as amended, A.R.S.). Conceivably, this could be included in paragraph 1 of § 13–110 A.R.S. of "five years or more" and also included under paragraph 2 of § 13–110 "any term less than five years". Had the legislature fixed the punishment for burglary at "less than five years" instead of "not to exceed five years", clearly paragraph 2 alone would apply. However, this is not the case and we therefore reaffirm our holding in State v. May, supra, which stated in effect that the court may sentence under either paragraph 1 or paragraph 2, the place sentenced and the time to be served determining whether it is a misdemeanor or felony. State v. Morales, 98 Ariz. 169, 402 P.2d 998 (1965). The language in Nestor, supra, in which we indicated that attempted burglary was clearly a felony, is in this regard incorrect.

In the instant case, the court could have sentenced the defendant to "not to exceed" two and one-half years in prison or "for not more than" six months in the County Jail. We find no error in the sentence of 90 days in jail the trial court imposed.

Judgment affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.