517 P.2d 1315

The STATE of Utah, Plaintiff and Respondent,

v.

Loren Craig SIMS, Defendant and Appellant.

No. 12966.

Supreme Court of Utah.

Jan. 8, 1974.

7. See Secs. 10, 11 and 12, Art. I, Utah Const.; Gallegos v. Turner, 17 Utah 2d 273, 409 P. 2d 386.

8. Alires v. Turner, 22 Utah 2d 118, 449 P. 2d 241.

James N. Barber, of Meredith, Barber & Day, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., M. Reid Russell, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a rape conviction in a case tried to a jury. Affirmed.

Admissible evidence believable by and. in support of the jury can be documented as follows:

Sims met the prosecutrix Link for the first time on December 4, and by agreement picked her up at a party at about 9:00 p. m., where they and others did some drinking. Thereafter they left in his truck and went to his darkened auto repair shop to get some wine. He unlocked the door, apparently got the wine, returned, and they drove up a local canyon, developed engine trouble, returned to his shop, still dark. Both went in and he asked if she "wanted to ball," when she said no. They left in an-

other car, went into another canyon, where they parked, and where he gave her a "little kiss," but made no further advances. They then drove to a friend's home, where they stayed awhile and consumed some more alcohol, after which she said they drove to her boyfriend's home. He was away. Sims said he wanted to go back and turn the lights on at his shop before taking her home. This was after midnight, in the early morning of the 5th. The shop was dark. They entered the shop. As they went toward the back, she was struck several times on the head, her watch was broken and her wrist bruised. He had a lump on the back of his head and a two-inch bruise near his eye. When she came to, her pants had been pulled down, sans two buttons, and her soiled panties were displayed for all the world and the veniremen to see (to which ebullience the defendant quite naturally but more legally objected). The prosecutrix, cut up and bleeding, boarded a Corvette with the help of Sims, who headed for a hospital, stopping en route to ask two Highway Patrolmen for directions. Meanwhile the prosecutrix, alongside, was in full view of the peace officers. She never attempted to get out of the car, and they apparently never attempted to get in,—or to investigate the matter.[1]

Sims drove Link to the hospital where both were given medical treatment, where Miss Link displayed a gash in her scalp and a small laceration on the nipple of her breast.

She denied marijuana, but not beer, wine and "white alcohol" imbibition,—also denying consent to any biological indulgence with Sims. If the jury believed that urgence, there would be considerable justification for the jury's verdict, in the light of other testimony, since a competent doctor of obstetrics and gynecology examined her 12 hours after Sims had met her at the party and found "live sperm in the vagina," which he said could maintain its motility for from 8 to 12 hours commonly, and possibly for a period of 24. Miss Link denied having any voluntary intercourse with anyone during that period. A jailmate of Sims testified that Sims told him that he had knocked Miss Link unconscious and raped her, then pretended she and he had been assaulted by burglars, about which no physical evidence at the shop substantially was adduced. This testimony was attacked and somewhat discounted but not destroyed on cross-examination. Whatever credibility was attached thereto we will not know. Anyway, it was the jury's prerogative, not ours, to canvass it, weigh it, believe it or ignore it.

1. Only conjecture indulgeable here is that all were suffering from some sort of trauma or became ill at the sight of blood.

■ There was considerable other testimony about time, routes taken, attempted visits to Miss Link's home, nurse's observations, contradictory statements of Sims,— all highly controversial, which was not particularly germane to the basic facts recited above, if the jury believed them,— which apparently it did. Therefore, although someone or more on this court may have been impressed with some of the fantasy revealed in this case, and thus may have entertained a reasonable doubt, nonetheless the jurymen had no such misgivings about them, and the believable facts adduced very well could have sustained their determination. Hence we reject defendant's First Point on Appeal,—that of insufficiency of the evidence.

■ His Second Point suggested that the court erred in not ordering a change of venue on motion of defendant on ground of undue publicity on the part of the press. The record reveals no glaring facts, prejudicial or inaccurate reportorial conduct in this respect, and we share the trial court's conclusion on this aspect of the case and feel that the discretion which he exercised here,—which is his,—was not abused, and consequently inviolate on appeal.

■ ■ The Third Point having to do with not permitting defendant to take Miss Link's deposition before trial also is discretionary with the trial judge,—and as in the previous Point,—the discretion was not and hardly could have been abused since counsel never noticed the motion for hearing, it was not before the court, and the reason for the motion only was to determine the whereabouts of Link's boyfriend on the night in question—a matter whose pertinency seems somewhat mystifying.

■ Three other Points on Appeal were urged, i. e.: 1) Error in admitting as evidence the panties Miss Link allegedly wore on the night of the incident, apparently on custodial sequence grounds,— which also is a discretionary matter with the judge, and which, under the record in this case, we think was not abused; 2) error in allowing Sims' jailmate to testify,— which appears to be a point simply attacking the credibility of the witness, which in this case was the jury's business, not ours; and 3) error in not permitting a witness to testify as to Miss Link's reputation, which has no merit since such evidence, as was proffered here had to do with chastity, and such evidence is relevant only where consent is involved, which consent Sims did not assert as a defense, but contrariwise, insisted no relations were indulged with her at all.

CALLISTER, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.