545 P.2d 946

**STATE of Arizona ex rel. Gary POPE, Mohave County Attorney, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MOHAVE, the Honorable Leonard C. Langford, and Joseph Cary GRIER, Real Party in Interest, Respondents.**

**No. 12386.**

Supreme Court of Arizona, In Banc.

Feb. 2, 1976.

Gary R. Pope, Mohave County Atty., Barbara K. Miller, Deputy County Atty., Kingman, for petitioner.

Lee E. Bruno, Kingman, for respondent, Joseph Cary Grier.

GORDON, Justice:

The County Attorney of Mohave County acting on behalf of the State of Arizona brings this special action requesting that this Court reconsider existing law on the admissibility of evidence concerning the unchaste character of a complaining witness in a prosecution for first degree rape under A.R.S. §§ 13–611, 13–612 and 13–614. The respondent, The Honorable Leonard C. Langford, reluctantly denied petitioner's motion in limine to bar the admission of such evidence because of the binding nature of appellate decisions on the subject. The real party in interest, Joseph C. Grier, has been arraigned on one count of kidnapping, three counts of rape, two counts of sodomy and two counts of lewd and lascivious conduct. He opposes any action which would limit his ability to introduce evidence at his upcoming trial which would tend to show the unchaste character of the alleged victim.

In Arizona, as in virtually all jurisdictions, after a witness has testified the adverse party may impeach his character by the testimony of other witnesses that he has a poor reputation for truth and veracity. *State v. Harris,* 73 Ariz. 138, 238 P.2d 957 (1951); Udall, Arizona Law of Evidence § 66 (1960). This state is in the minority, however, in holding that the use of character evidence to impeach a witness may not extend to the showing of a specific prior bad act for which the person was not convicted of a felony:

"All courts hold that if a witness has been convicted of a felonious crime it is admissible to affect his credibility. *Hadley v. State,* 25 Ariz. 23, 212 P. 458; *Midkiff v. State,* 29 Ariz. 523, 243 P. 601; 3 Wigmore Evidence 538, § 980 (3d ed. 1940). * * * The majority of courts will allow on the cross-examination of the witness, specific acts of misconduct not sustained by a conviction to be shown which affect veracity. 3 Wigmore Evidence 550, § 983 (3d ed. 1940). But this court has allied Arizona with the minority of states by holding that on cross-examination specific acts of misconduct cannot be shown unless the witness has been convicted of that crime.

\* \* \* \* \* \*

"The reason given by the courts for this limitation is that this is a collateral matter and if allowed it would be time-consuming and a confusion of the issues. Another good reason is the protection of the witness. He should not be expected to come prepared to defend every incident of his past life but only to meet those felonious acts of which he has been convicted. If a witness knew that he would have all his alleged misdeeds made public and be open to false accusations as to others, from which he would not be permitted to defend or explain, he would dread the witness box and be reluctant to appear and give testimony freely." *State v. Harris,* 73 Ariz. at 142, 238 P.2d at 959. See *State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974); *Baumgartner v. State,* 20 Ariz. 157, 178 P. 30 (1919).

The prejudicial effect the admission of specific bad acts would have on the jury's

reliance upon the veracity of the witness would outweigh the benefits impeachment would provide. *State v. Johnson,* 94 Ariz. 303, 383 P.2d 862 (1963); *State v. Albe,* 10 Ariz.App. 545, 460 P.2d 651 (1969).

The substantive use of reputation to prove character, from which the jury is asked to infer the existence of a material or ultimate fact in the case, is also generally prohibited. McCormick, Law of Evidence § 187 et seq. (2d ed. 1972). The usual rationale behind the exclusion of such evidence in criminal cases, as expressed in Wigmore's Rules of Auxiliary Probative Policy, is that the testimony is "too relevant" and prejudicial:

> "That such former misconduct is relevant, *i. e.* has probative value to persuade us of the general trait or disposition, cannot be doubted.
>
> \* \* \* \* \* \*
>
> "It may almost be said that it is because of this indubitable relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's [or witness'] life make it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications." 1 Wigmore on Evidence §§ 193, 194 (3d ed.)

The major exception to this rule in criminal cases occurs where a defendant offers evidence of his good reputation for the trait involved in the charge. On cross-examination of the defense's character witness or on rebuttal the state may offer testimony tending to show the defendant's bad reputation for that trait. *State v. Wil-*

*liams,* 111 Ariz. 511, 533 P.2d 1146 (1975); *State v. Fierro,* 108 Ariz. 268, 496 P.2d 129 (1972).

The substantive use of specific bad acts of a witness is also barred because as a general proposition they have little relevance to the merits of the present action and may be extremely prejudicial. *State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973); *People v. Norred,* 110 Cal.App.2d 492, 243 P.2d 126 (1952); *Pennington v. Commonwealth,* 310 Ky. 265, 220 S.W.2d 556 (1949). The inflammatory nature of such evidence tends to portray the witness or accused to the jury as a bad or immoral person that habitually commits illegal or improper acts. *People v. Sam,* 71 Cal.2d 194, 77 Cal.Rptr. 804, 454 P.2d 700 (1969); *People v. Liapis,* 3 Ill.App.3d 864, 279 N.E.2d 368 (1972); *State v. Whalon,* 1 Wash.App. 785, 464 P.2d 730 (1970).

As we stated in *Guey v. State,* 20 Ariz. 363, 181 P. 175 (1919):

> "The general rule is that one criminal case cannot be made out by proving another of like character \* \* \*. That a person has committed one crime has no direct tendency to show he has committed another similar crime, which had no connection with the first, and a person charged with one offense cannot be expected to come to court prepared to meet the charge of another. If the doing of one wrongful act shall be deemed evidence to prove the doing of another of a similar character, which has no connection with the first, issues would be multiplied indefinitely, without previous notice to the defendant, and greatly to the distraction of the jury.
>
> " 'The general rule is that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded.' " *Guey v. State,* 20 Ariz. at 368–69, 181 P. at 177. See

**26**

*State v. Johnson,* 94 Ariz. 303, 383 P.2d 862 (1963); *State v. Thomas,* 71 Ariz. 423, 229 P.2d 246 (1951).

Thus, for example, the prosecution in a rape case is generally precluded from presenting evidence that a defendant had previously raped another woman on the theory that because one woman was raped does not mean that another did not consent. *Lovely v. United States,* 169 F.2d 386 (4th Cir. 1948); *State v. McFarlin,* supra.

Almost every jurisdiction permits as an exception to one or more of the general rules of exclusion discussed above the substantive use of evidence concerning the unchastity of a prosecutrix where the defense of consent is raised in a forcible rape prosecution. A majority of states limit the scope of this character evidence to a showing of the general reputation of the complaining witness for unchastity, while a minority in addition allow the presentation to extend to specific prior acts of unchastity. The leading case in Arizona is *State v. Wood,* 59 Ariz. 48, 122 P.2d 416 (1942), where we adopted the existing rule in California which admitted both types of evidence on the theory that it "best conforms to logic and the common experience of mankind":

> "If consent be a defense to the charge, then certainly any evidence which reasonably tends to show consent is relevant and material, and common experience teaches us that the woman who has once departed from the paths of virtue is far more apt to consent to another lapse than is the one who has never stepped aside from that path." *State v. Wood,* 59 Ariz. at 52, 122 P.2d at 418.

The reasoning in *Wood* has been consistently followed. *State v. Kelley,* 110 Ariz. 196, 516 P.2d 569 (1973); *State v. Martinez,* 67 Ariz. 389, 198 P.2d 115 (1948).

The admissibility in Arizona of character evidence concerning unchastity to attack the credibility of the complaining witness in a forcible rape prosecution is less clear. Udall, Arizona Law of Evi-

dence § 68 (1960). Dictum in *Wood* implies that general reputation for unchastity is admissible for that purpose, while language in *Sage v. State,* 22 Ariz. 151, 195 P. 533 (1921), seems to imply the opposite. We find the latter result far more compelling. The law does not and should not recognize any necessary connection between a witness' veracity and her sexual immorality. *Dewey v. Funk,* 211 Kan. 54, 505 P.2d 722 (1973); *Riddle v. State,* 92 Okl.Cr. 397, 223 P.2d 379 (1950); *State v. Thompson,* 59 Wash.2d 837, 370 P.2d 964 (1962). For this reason we upheld the trial court's refusal to allow questions in an indecent exposure prosecution directed at the complaining witness' prior adulterous relationship or divorce because "[t]hese assertions have no relevancy to the complaining witness' truth or veracity, nor do they have any reasonable connection with the issues before the jury." *State v. Wayman,* 104 Ariz. 125, 449 P.2d 296 (1969). It would be similarly unreasonable to allege a link between the prior improper sexual activity of a prosecutrix in a rape prosecution and the truthfulness of her sworn testimony. Several courts have recognized that to hold otherwise would necessarily imply the absurd proposition that the extra-marital sexual history of a female witness would be admissible to impeach her credibility in any case in which she testified:

> "* * * If this class of evidence was admissible as going to the credibility of the testimony of the prosecutrix in its entirety, then it would be equally admissible as against the veracity of any female who might be called upon to give evidence in a case. Yet no such principle is recognized anywhere * * *." *People v. Johnson,* 106 Cal. 289, at 294, 39 P. 622, at 623 (1895). See *State v. Linton,* 36 Wash.2d 67, 216 P.2d 761 (1950).

If the witness' reputation for chastity is so bad that it has in some way affected her credibility, then extrinsic evidence would be admissible to prove that she had a bad reputation for truth and veracity. This

showing may not include reference to prior illicit sexual activity. If the witness' reputation for chastity has not produced this result, then the jury should not be invited to make this decision. *State v. Wolf,* 40 Wash.2d 648, 245 P.2d 1009 (1952).

A more difficult question is posed when one balances the probative value of evidence concerning the prosecutrix' unchastity against its prejudicial effect when the defense of consent is raised. Where a defense other than consent is raised, the substantive use of such evidence is obviously improper because it is irrelevant and serves only to inflame the minds of jurors. *Shay v. State,* 229 Miss. 186, 90 So.2d 209 (1956); *State v. Sims,* 30 Utah 2d 357, 517 P.2d 1315 (1974), cert. denied, 417 U.S. 970, 94 S.Ct. 3175, 41 L.Ed.2d 1141 (1975). Opponents of the use of evidence concerning unchastity in rape prosecutions argue that where consent is alleged the complaining witness is subjected to embarrassing questions about the most private aspects of her life, leaving her and possibly the jury with the feeling that her moral background rather than the defendant is on trial.

Recognizing the validity of this charge in many instances, several jurisdictions, including Arizona, have recently held it improper to give the cautionary instruction formulated by Lord Hale on the King's Bench approximately three hundred years ago that rape is a charge easily made and difficult to defend. *State v. Settle,* 111 Ariz. 394, 531 P.2d 151 (1975); *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975); *State v. Feddersen,* Iowa, 230 N.W.2d 510 (1975). Admonishing the members of the jury to view the prosecutrix' testimony with special care constituted a comment on the evidence and applied a stricter test of credibility to the rape victim than other witnesses at the trial and victims of other crimes. This instruction, like the exception allowing the substantive use of character evidence concerning unchastity, was fostered by the fallacy that the crime of rape is characterized by a high incidence of unwarranted accu-

sations and prosecutions which rely on the uncorroborated testimony of the alleged victim.

Having adopted the then-existing California Supreme Court rule regarding the admission of evidence concerning unchastity in *State v. Wood,* supra, it is particularly enlightening to note that court's recent survey of empirical data in this area:

"Of the FBI's four 'violent crime' offenses of murder, forcible rape, robbery, and aggravated assault, forcible rape has the highest rate of acquittal or dismissal. (FBI, Uniform Crime Reports 1973 (1974) table 18, p. 116; see also *id.,* at p. 35 [same result as to adult suspects only]. Equally striking is the ranking of forcible rape at the bottom of the FBI's list of major crimes according to precentage of successful prosecutions for the offense charged. * * *

"These findings are consistent with the leading study of jury behavior, which found that 'the jury chooses to redefine the crime of rape in terms of its notions of assumption of risk,' such that juries will frequently acquit a rapist or convict him of a lesser offense, notwithstanding clear evidence of guilt. (Kalven &. Zeisel, The American Jury (1966) p. 254.) * * * The jury 'closely, and often harshly, scrutinizes the female complainant and is moved to be lenient with the defendant whenever there are suggestions of contributory behavior on her part,' sometimes carrying 'to a cruel extreme,' in cases 'clearly aggravated by extrinsic violence,' its tendency towards leniency for accused rapists (*Id.,* at pp. 249, 251.) * * *

" * * * Rape in particular has been shown by repeated studies to be grossly underreported. [citations omitted]. The initial emotional trauma of submitting to official investigatory processes, the fear of subsequent humiliation through attendant publicity and embarrassment at trial through defense tactics which are often demeaning, and a disinclination to encounter the discretion of the police in

deciding whether to pursue charges of rape, especially with regard to what may appear to the police to be 'victim-precipitated' rapes, are among the powerful yet common disincentives to the reporting of rape. [citations omitted] * * * A large number of reports of rape are deemed 'unfounded' by the police and are pursued no further * * *. [citations omitted.] * * *

"Kalven and Zeisel found, in the course of their nationwide jury studies, that eyewitness evidence was presented by the defense in rape prosecutions more frequently than in burglary, narcotics, or drunk driving prosecutions. (Kalven &. Zeisel, supra, table 41, p. 143.) The likelihood of the trial turning on a credibility contest between the accused and his accuser was as great in a case of non-sexual assault as in a case of rape. * * * And it was the defendant in a narcotics case rather than a rape case who was most likely to appear as the only witness for the defense." [footnote omitted] *People v. Rincon-Pineda*, 14 Cal.3d at 879, 123 Cal.Rptr. at 129–31, 538 P.2d at 257–59.

In addition, California Evidence Code §§ 782 and 1103 now severely restrict the admission of evidence concerning the prosecutrix' unchastity. Other states have enacted similar legislation.[1] (Florida) F.S.A. § 794.022(2); (South Dakota) S.D.C.L. § 23–44–16.1.

The "logic" and "common experience of mankind" upon which we rested our holding in *State v. Wood*, supra, now clearly dictate that the case be overturned. It is no longer satisfactory to argue that we should "more readily infer assent in the practised [sic] Messalina, in loose attire, than in the reserved and virtuous Lucretia." *People v. Abbot*, 19 Wend. 192 (N.Y.1838). The reasoning consistently advanced by this Court to bar most prior bad acts of a witness applies with even greater force in a rape prosecution. Reference to prior unchaste acts of the complaining witness "injects collateral issues into the case which * * * divert the jury's attention from the real issue, the guilt or innocence of the accused." *Wynne v. Commonwealth*, 216 Va. 355, 218 S.E.2d 445 (1975). A prosecutrix in a forcible rape prosecution "should not be expected to come prepared to defend every incident of [her] past life." *State v. Harris*, supra. In accordance with the general rule, "the doing of one wrongful act shall [not] be deemed evidence to prove the doing of another of a similar character, which has no connection with the first." *Guey v. State*, supra. The fact that a woman consented to sexual intercourse on one occasion is not substantial evidence that she consented on another, but in fact may indicate the contrary. *McDermott v. State*, 13 Ohio St. 332, 82 Am.Dec. 444 (1862); *Commonwealth v. McKay*, 363 Mass. 221, 294 N.E.2d 213 (1973); *State v. Jackson*, 126 Vt. 250, 227 A.2d 280 (1967); Cf. *State v. McFarlin*, supra.

"Such evidence has little or no relationship to either the ability of the prosecuting witness to tell the truth under oath or her alleged consent to the intercourse. Any relevancy that may exist is outweighed by its inflammatory effect. Its use could easily discourage prosecutions for rape; it is distracting, and it may so

---

1. Arizona Proposed Code, Art. 14, § 1409 states:

"Admissibility of Evidence of Prior Sexual Conduct

"(a) Opinion and reputation evidence of the victim's sexual conduct shall not be admitted in a prosecution under this article. Evidence of specific instances of the victim's sexual conduct shall be admissible in prosecutions under this article only to the extent that the following proposed evidence is material to a fact at issue:

(1) testimony establishing the victim's past sexual conduct with the defendant; or
(2) testimony which directly refutes physical or scientific evidence

"(b) Prior to introduction of evidence under subsection (a), a written motion and offer of proof shall be filed with the court and the judge shall order an in camera hearing to determine admissibility of evidence under subsection (a)."

prejudice the jury that it would acquit even in the face of overwhelming evidence of guilt." *State v. Geer*, 13 Wash.App. 71, at 73, 533 P.2d 389, at 391 (1975).

■ We recognize there are certain limited situations where evidence of prior unchaste acts has sufficient probative value to outweigh its inflammatory effect and require admission. These would include evidence of prior consensual sexual intercourse with the defendant or testimony which directly refutes physical or scientific evidence, such as the victims alleged loss of virginity, the origin of semen, disease or pregnancy. See *State v. Bradley*, 72 Ariz. 16, 230 P.2d 216 (1951); *Commonwealth v. McKay*, supra; *Goodson v. State*, 354 P.2d 472 (Okl.Cr.App.1960).

■ The presentation of reputation evidence to demonstrate the unchastity of the prosecutrix where the defense of consent is raised should also be barred for reasons similar to those which render substantive evidence of prior acts inadmissible. While this position is contrary to the weight of authority, it appears to be the modern and well-reasoned approach as such evidence deals with collateral matters and thus is of limited probative value, tends to unduly prejudice jurors' minds and is almost impossible to effectively rebut. See *State v. Allen*, 66 Wash.2d 641, 404 P.2d 18 (1965); *State v. Geer*, supra. As with evidence concerning prior acts, this rule of exclusion must be subject to certain exceptions, such as where the prosecution offers evidence of the complaining witness' chastity. See *Commonwealth v. McKay*, supra; *State v. Aveen*, 284 Minn. 194, 169 N.W.2d 749 (1969). Reputation evidence concerning unchastity may also be relevant in an attempted rape prosecution, where the subjective intent of the assailant is an element of the crime. *State v. Geer*, supra.

■ We envision that there may be exceptions other than those noted above to the inadmissibility of evidence concerning the complaining witness' unchastity. Where, for instance, the defendant alleges the prosecutrix actually consented to an act of prostitution, the accused should be permitted to present evidence of her reputation as a prostitute and her prior acts of prostitution to support such a defense. In addition, evidence concerning unchastity would be admissible in conjunction with an effort by the defense to show that the complaining witness has made unsubstantiated charges of rape in the past.

■ In these and other instances in which the evidence concerning unchastity is alleged to be sufficiently probative to compel its admission despite its inflammatory effect, a hearing should be held by the court outside the presence of the jury prior to the presentation of the evidence. This hearing should be preceded by a written motion or offer of proof on the record, made without the jury's knowledge, which should include the matters sought to be proved by either cross-examination of the complaining witness or by other witnesses. Either of these should make reference to specific records or documents which may be relied upon. If the defendant alleges that proffered evidence falls into one of the above exceptions, the trial court should allow its admission if it is not too remote and appears credible.

■ We hold that character evidence concerning unchastity is inadmissible to impeach the credibility of a prosecutrix in a forcible rape prosecution. Evidence tending to show her unchaste reputation or prior unchaste acts is also inadmissible for substantive purposes on the issue of consent, subject to the limited exceptions discussed above.

Pursuant to Rule 14(a) of the Rules of the Supreme Court, we find good cause and hereby order that the mandate in this case be issued as of the date this opinion is filed.

Petition for relief granted; the stay heretofore granted is vacated.

CAMERON, C. J., and STRUCKMEYER, V. C. J., concur.

HOLOHAN, Justice:

I concur in the result.

**30**

HAYS, Justice (specially concurring):

I concur with the result reached by the majority opinion, but I cannot approve a procedure which permits evidence of the prosecutrix' reputation as a prostitute even on the limited issue of consent. In advancing to a more reasonable and logical position by overruling *State v. Wood*, 59 Ariz. 48, 122 P.2d 416 (1942), we should take a full step rather than mincing toward the final goal. Reputation evidence is questionable evidence at best and should not be given a special standing in the limited field of rape. If it has no place in other offenses, it should not be singled out for this one offense.

I am also unable to concur with the majority's position which rather vaguely states that the defense may show that "the complaining witness has made unsubstantiated charges of rape in the past." The reason or logic in carving out such an exception to the rule excluding evidence of the unchastity of the complaining witness in a rape case escapes me.

I concur with the result.