788 P.2d 1216

**STATE of Arizona, Appellee,**

v.

**Jamie Andrew CASTRO, Appellant.**

**No. 1 CA–CR 12318.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 24, 1989.

Reconsideration Denied Jan. 24, 1990.

Review Denied April 17, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Aspey, Watkins & Diesel by Bruce S. Griffen and Wendy F. White, Flagstaff, for appellant.

## OPINION

FIDEL, Judge.

The defendant was charged by information with one count of sexual conduct with a minor, a class 6 felony.[1] A jury found him guilty as charged. Defendant was placed on supervised probation for one year and ordered to spend 180 days in jail as a probationary term. Defendant filed a timely notice of appeal. We conclude that the trial court impermissibly restricted defendant's right to cross-examine the prosecuting witness, and we reverse.

## I. FACTS

On December 27, 1985, police were called to the hospital to interview S., a seventeen-year-old girl. S.'s mother had found her hemorrhaging at home, and S. was transported to the hospital with no blood pressure and a very rapid pulse.

Initially S. claimed she was the victim of a rape and described her assailant in explic-

it detail. After extensive questioning, and after the medical personnel discovered that she had in fact suffered either a miscarriage or self-induced abortion, S. admitted that this account was a fabrication; eventually she implicated defendant as the man who had impregnated her.

The defendant had coached S. in weight-lifting and body building for a period of months beginning in May of 1985. When they met, S. was sixteen and defendant was twenty-eight.

S. first claimed to have had intercourse with defendant only once, in August of 1985. Later, apparently after learning of medical evidence that her aborted fetus could not have been conceived that late, S. changed her story and alleged four or five sexual encounters with defendant in May, June, and July. She initially said the August encounter occurred late at night after a school dance, but later said it happened at 4:30 or 5:00 in the afternoon.

Before trial, the state asked the court to preclude defendant from introducing evidence of S.'s prior sexual history, pregnancy, or abortion. The trial judge granted the motions over defendant's objection.

On appeal, we consider these issues:

(1) Did the trial judge err in prohibiting evidence about the medical emergency that occasioned S.'s accusations against defendant?

(2) Did the trial judge err in prohibiting questions concerning the prior sexual conduct of the prosecuting witness?

(3) Did the trial judge err in allowing testimony about uncharged acts of sexual contact between defendant and the prosecuting witness?

We conclude that the trial court committed reversible error when it precluded defendant from presenting evidence of the medical emergency that occasioned S.'s accusations against defendant. We address other issues to guide the trial court on remand

---

1. A.R.S. § 13–1405 (1989) (effective May 16, 1985) provides: "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age.... Sexual conduct with a minor fifteen years of age or over is a class 6 felony."

and to settle complex evidentiary issues that may recur.

## II. EVIDENTIARY RULINGS

### A. *Evidence of Medical Emergency*

■ The state moved in limine to preclude evidence of S.'s pregnancy and the circumstances of her abortion. The trial judge granted the motion, finding that both were irrelevant and, alternatively, that their prejudicial quality outweighed whatever probative value they might have. Defendant argues that this ruling unduly restricted his right to explore the background and motive for the prosecuting witness's accusation. We agree.

Defendant claimed that he never had sexual relations with S. and that her accusations were false. His theory, as we construe it, was that, after the medical emergency brought S.'s pregnancy to light, she felt a need to give an explanation that would deflect blame from herself. When it became apparent that her first explanation—rape by a stranger—failed to convince police, she needed to name someone. As the theory continues, she falsely named defendant either to protect the real father, to conceal that she had been promiscuous and could not identify the father, or to transfer blame to an older man likely to be viewed as a seducer. Central to defendant's theory was that S.'s entire story arose when, because of the medical emergency caused by the abortion, she was forced to explain her pregnancy.

Although a trial judge has discretion to decide the proper scope of cross-examination, unreasonable limitations can defeat a defendant's right to confrontation under the state and federal constitutions. *State v. Dunlap*, 125 Ariz. 104, 105, 608 P.2d 41, 42 (1980). Evidence that S. had been pregnant was material to the defense because it gave context to, and tended to show motive for, S.'s accusation. The court's initial refusal to permit evidence of pregnancy severely hampered defendant's ability to cross-examine S. and to explore her motive. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

An impairment of the right to confrontation may be harmless, however. *State v. Wilhite*, 160 Ariz. 228, 772 P.2d 582 (App. 1989). And any prejudice to defendant from the court's *pregnancy* ruling was reduced when S. revealed her pregnancy on direct examination, apparently to the prosecutor's surprise. After this revelation, the defense urged the court to reconsider its earlier ruling. The court said:

> [Defense counsel] can certainly ask her when she became pregnant or when she thought she became pregnant. That evidence is out, that question was asked, and you can go into the pregnancy. But I have told you you cannot go into the events of December 27; the placenta, the hemorrhaging, the blood, scissors, and that testimony.

Thus, the defense was permitted to inquire about the pregnancy, but remained foreclosed from establishing that the entire investigative sequence that culminated in S.'s accusation was launched by a medical emergency.

Evidence that S. had suffered a medical emergency was necessary to provide a context for her December 1985 disclosure of sexual relations four months before. The prosecutor himself expressed concern at a pretrial conference that the judge might be limiting the jury to a distorted picture of the case.

> PROSECUTOR: A sexual act [that occurred] with this defendant on August 23, 1985, was reported ... by the victim on December 29, 1985, approximately four months later.
>
> Now, as the Court is well aware, and counsel, it happened while the victim's life was in danger, having suffered an incredible loss of blood from a miscarriage that occurred at her home. In fact, she was given eight units of blood. She went into the hospital with no blood pressure and a very rapid pulse.
>
> ... *I don't want to present the reporting of the sexual incident in a void or vacuum,* because, certainly, counsel is entitled to bring out the fact that the act was not reported or disclosed by the victim until four months later. Then *the*

*court's ruling has eliminated the context or most of the context of that reporting.*

(Emphasis added.)

Despite this argument, the court responded:

THE COURT: Now, you [the prosecutor] are either going to bring [in evidence of the medical emergency] or you are not. If you bring it in, [defense counsel] has a right to elaborate on it.

. . . .

I am just going to suggest to you that you stay away from anything that has to do with the medical treatment. I would just say, when was this reported? It was reported on such and such a time. I think it would be more prejudicial than probative for you to start hedging around medical treatment now.

We are sensitive to the trial court's concern: evidence that S. had herself induced an abortion, and the details of that incident, could easily confuse or divert the jury. *See, e.g.,* Rule 403, Arizona Rules of Evidence. As the trial court correctly stated, there was no need for the jury to hear of blood and scissors. On remand we leave to the court's discretion under Rule 403 the extent to which the *details* of S.'s medical emergency can be explored. However, we conclude that the defendant was entitled to show the jury, at a minimum, that S. was pregnant and that she accused the defendant of intercourse in the afterthroes of a medical emergency that entailed the termination of her pregnancy.

### B. *Prosecuting Witness's Prior Sexual Conduct*

#### 1. Application of *Pope*

The defendant sought to introduce evidence that S. had sexual relations with persons other than himself. The trial court concluded that the evidence was inadmissible pursuant to *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976).

■ Our supreme court held in *Pope* that "[e]vidence tending to show [the prosecutrix's] unchaste reputation or prior un-

chaste acts is ... inadmissible for substantive purposes on the issue of consent...." *Id.* at 29, 545 P.2d at 953. *Pope* further condemned the attempt to use evidence of unchastity as character evidence of inveracity. The court stated:

Such evidence has little or no relationship to either the ability of the prosecuting witness to tell the truth under oath or her alleged consent to the intercourse. Any relevancy that may exist is outweighed by its inflammatory effect.

*Id.* at 28, 545 P.2d at 952.

Later, our supreme court explicitly extended the *Pope* rule to child molestation cases. *State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071 (1988). The court stated that *Pope*'s concerns—that "requiring crime victims to defend every incident in their pasts will discourage prosecution" and that the "introduction of sexual histories might confuse the jury"—were just as valid in child molestation cases as in rape prosecutions. *Oliver,* 158 Ariz. at 27, 760 P.2d at 1076. Because these concerns are equally valid in cases alleging sexual conduct with a minor, we conclude that *Pope* is applicable to this case.

■ To conclude that *Pope* is applicable, however, is not the end of analysis where sexual history is concerned. It should not have taken until *Pope* in 1976 for the law to determine that a woman's history of sexual relations is probative neither of her veracity as a witness nor of her consent to sexual relations in a given instance. There may, however, be other probative purposes than these, and *Pope* does not proscribe them all. The correct application of *Pope* requires critical scrutiny of (1) the validity of defendant's probative theory; (2) the evidence defendant seeks to admit, as detailed by offer of proof; (3) the tendency of that evidence to support defendant's probative theory; and (4) the inflammatory or diversionary risks of placing such evidence before the jury. Moreover, where both probative value and prejudicial potential are found, *Pope* does not require wholesale prescription. Rather, inquiry must turn to whether the probative benefit may be preserved and the risks of unfair prejudice

minimized by careful restrictions on the scope or details of the proof. *See, e.g., State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071, discussed *infra.* In ruling on these difficult questions, the court must be mindful of *Pope's* purpose to reduce the trauma and humiliation of the criminal process for the victims of sexual crimes; yet the court must also meet its constitutional obligation to preserve the defendant's rights to cross-examine and defend.

With these guidelines in mind, we turn to defendant's probative theory and offer of proof.

### 2. Proof of Prior Sexual Conduct To Rebut Inference of Pregnancy

■ The defendant argues that, because the jury was told that S. had been pregnant and because S. testified that she had sexual intercourse with the defendant, the jury was encouraged to infer that the defendant was the source of her pregnancy and must have committed the charged offense. The defendant was entitled, he argues, to rebut this implication by showing that S. had been sexually active with others.

Defendant offered to prove that S. had admitted to sexual relations on one occasion in 1983 and that in April of 1985 S. had undergone testing for possible exposure to venereal disease in January of that year. Defendant also offered to call one Craig Simmons to testify that he had had sexual contact with S. and that she had accused him of impregnating her and had threatened him with a sexual assault prosecution.

This evidence, if admitted, would not have refuted the inference that the defendant had impregnated S. The first two items of proof, the sexual contact in 1983 and the testing for venereal exposure in January 1985, sufficiently predated conception to have nothing whatever to do with S.'s pregnancy. The defendant offered no proof of the date of S.'s alleged contact with Simmons.

*Pope* permits evidence that *"directly refutes* physical or scientific evidence, such as ... pregnancy." 113 Ariz. at 29, 545 P.2d at 953 (emphasis added). In a case

*Pope* cited on this point, the Oklahoma Court of Criminal Appeals stated:

> [W]here the state in its case in chief proves pregnancy in corroboration of the act of intercourse, then it is competent for the defendant to offer evidence that some other person, *at about the time of the alleged offense,* had intercourse with the prosecutrix for the purpose of rebutting the corroboration shown by the pregnancy.

*Goodson v. State,* 354 P.2d 472, 475 (Okla. Crim.App.1960) (emphasis added). *See also State v. Lindsey,* 149 Ariz. 493, 497–98, 720 P.2d 94, 98–99 (App.1985).

■ Because defendant's offer of proof was insufficient to meet this standard, the trial court properly prevented defendant from introducing the evidence that he described. However, the trial court erred by preventing the defendant from *cross-examining* S. regarding her sexual activity at the time of conception.

The record indicates that the judge may have misunderstood counsel's request for permission to cross-examine the witness regarding the source of her pregnancy. At a pretrial hearing, the court was asked to rule on the admissibility of the items contained in defendant's offer of proof and also to rule on the admissibility of evidence concerning S.'s pregnancy and abortion. The state never disputed that evidence would be admissible if it *directly refuted* S.'s testimony that the defendant was the source of her pregnancy; rather, the state argued that the evidence described in defendant's offer of proof lacked this quality. We quote defense counsel's interchange with the court:

> DEFENSE COUNSEL: ... [S]he had adamantly claimed that she was impregnated on August 23. After speaking with [the prosecutor] and finding out that the State's evidence was that the placenta ... was 28 weeks, or full term, ... then for the first time we had statements made, "Well, I started having sex with the defendant back in June."
>
> Now, ... we can show at least some other people who she very likely was having sex with.

THE COURT: That's irrelevant. It has nothing to do with this.

DEFENSE COUNSEL: Not through their testimony, *through her own testimony.*

THE COURT: *It's still irrelevant.* I don't care if she had had sex a thousand times, it's inadmissible.

DEFENSE COUNSEL: It's not irrelevant. It goes to the credibility of this girl and whether or not she had sex with this individual on August 23. That's the only way I have got to go about it.... [T]hat's why we have cross-examination. That's why we cross-examine witnesses, to find their credibility, their motives, prior inconsistent statements.

. . . .

THE COURT: Counsel, I stick by my original ruling, number one. Number two, I think you have the right to ask her if she thought she was impregnated by this act of sexual intercourse with the defendant. Depending upon what her answer is, we will go from there.

But I do not think that the abortion, the scissors, the blood, the problems that occurred on December 27 are relevant. I think they are more prejudicial than probative. I stick with my original ruling, and *when you proceed to talk to her about whether or not she thought she was impregnated, be very careful about the way you do it.* Okay?

(Emphasis added.)

This exchange ranged broadly over issues of abortion, pregnancy, the offer of proof, and the right to cross-examine. Unfortunately, the defense did not ask the court to clarify its ruling regarding cross-examination. The judge might have thought counsel was asking whether, in cross-examining S., he could elicit evidence of the abortion or the evidence contained in his offer of proof. At the same time defense counsel might have reasonably interpreted the court's order as preventing him from cross-examining S. regarding other sexual contacts at the time of conception.

We conclude that the trial court erred to the extent that it prevented the defendant from asking S. about sex with others at the time she conceived or thought she conceived. *Pope* does not establish so onerous a burden that the defendant must establish in advance the *answers* he might elicit through cross-examination. Defendant was obliged under *Pope* to state the "matters *sought to be proved."* 113 Ariz. at 29, 545 P.2d at 953 (emphasis added).

Here, the defendant sought to elicit from the prosecuting witness that she had been sexually involved with others at the time she conceived. Had this evidence been obtained, it would have directly refuted the implication that the defendant was the only possible source of S.'s pregnancy. Such evidence falls within a *Pope* exception.

### 3. Proof of Prior Sexual Conduct To Show Motive for Accusation

■ Defendant alternatively argues that under *State v. Grice,* 123 Ariz. 66, 597 P.2d 548 (App.1979), he was entitled to submit the evidence described in his offer of proof to demonstrate that S. had a motive for accusing him. We disagree.

In *Grice,* the court implied that evidence of the prosecuting witness's prior sexual conduct could be admissible to show that the witness had a motive for accusing the defendant of rape. The defendant's theory in *Grice* was:

> The victim had contracted a venereal disease from her boyfriend. In order to prevent her mother from discovering that she had been having sexual intercourse with her boyfriend, she concocted the story of the rape. Thus, when her mother found out about the venereal disease, she could say she got it from appellant and her mother would be none the wiser.

*Id.* at 70, 597 P.2d at 552. The *Grice* court did not reject this theory; rather, it held that the defendant had failed to make a satisfactory offer of proof under the procedure set by *Pope.* Under *Pope,* a defendant must offer proof outside the presence of the jury that includes "the matters sought to be proved by either cross-examination of the complaining witness or by other witnesses." *Pope,* 113 Ariz. at 29, 545 P.2d at 953. In *Grice,* because there

was no *Pope* hearing, and the defendant failed to first establish that "the mother did not know that her daughter had previously engaged in sexual intercourse with her boyfriend," the court concluded that the defendant's motive defense "existed only in the mind of his counsel." *Grice*, 123 Ariz. at 70, 597 P.2d at 552.

In this case as in *Grice*, the defendant's offer of proof was inadequate to relate the facts he wished to prove to his motive theory. Defendant's motive theory, we reiterate, was that S. accused him in December of 1985 either to protect the real father, to conceal that she had been promiscuous and could not identify the father, or to shift the blame for her pregnancy from herself to an older man likely to be viewed as a seducer. The defendant's offer of proof, however, concerned (1) a 1983 sexual contact; (2) an April 15, 1985, examination for a January 1985 exposure to venereal disease; and (3) sexual relations with Simmons at an unspecified time. None of these matters was temporally related to conception. Nor does any of them have any other discernible probative bearing on defendant's motive theory. Our supreme court said in *State v. Oliver:*

> In Arizona, evidence of prior sexual history is inadmissible on the issue of motive unless the record clearly establishes a factual predicate from which motive can be inferred.

158 Ariz. at 32, 760 P.2d at 1081. No such predicate was established here.

### 4. Proof of False Claim of Virginity

During an interview with a social worker shortly after the abortion, according to defendant, S. claimed she had been a virgin until her relations with defendant.[2] In a pretrial interview with defense counsel,

however, S. acknowledged having intercourse once before in 1983. The defendant argues that he was entitled to introduce the evidence contained in the offer of proof to show that S. had lied in her original assertion of virginity.

Preliminarily we note that S. did not claim *at trial* that she had been a virgin prior to her contact with the defendant. Nor did the social worker testify on direct examination that S. had made such claims. If the prosecution had presented such evidence to the jury, the defendant would have been entitled to refute it by proving prior sexual contact. *Pope*, 113 Ariz. at 29, 545 P.2d at 953. The trial court recognized as much and stated to defense counsel:

> If [S.] should take the stand and say that she was a virgin and you want to attack her credibility by showing a prior inconsistent statement or a prior inconsistent act, the fact that she had sex with somebody else, you can do that. . . .

Here, however, the state placed no evidence before the jury that S. had ended her virginity with the defendant. It was the defendant, rather, who wished to introduce this claim and prove it false in order to attack the credibility of the prosecuting witness.

■ We divide this issue into two: The first is whether the defendant was entitled to introduce the evidence set forth in his offer of proof—sexual intercourse in 1983, the venereal testing in 1985, and intercourse with Simmons at an unidentified time—to refute the allegedly false claim of virginity. We find that the trial court correctly precluded such refutation. These subjects, as we have noted, were wholly collateral to the issues at the trial.[3] Their

---

**2.** There is no evidence in the record that the victim had claimed she was a virgin. There is, however, an adequate offer of proof by defense counsel as follows:

> [S.] has in the course of this investigation stated to Cherlyn Leach, the rape crisis intervention person with the Woman's Resource Center in Page, Arizona, that prior to the alleged sexual assault, presumably that which is charged August 23rd, 1985 with the Defendant, that she had had no prior sexual contact and was in fact a virgin.

We assume for the purpose of discussion that this assertion in counsel's offer of proof was true and that the evidence would have supported it had counsel been permitted to proceed as he proposed.

**3.** We decline to speculate whether the isolated evidence of the victim's threat to report Craig Simmons to the authorities—as distinguished from the evidence that she had intercourse with him—would be admissible, because defendant has not argued an alternative theory of relevan-

introduction would have unnecessarily intruded upon the privacy of the prosecuting witness and shifted the focus of the trial from defendant's conduct to his accuser's sexuality.

█ A different question is whether the defendant should have been permitted to prove *without elaboration* that S. had falsely claimed in her initial interviews, as the accusation against defendant was emerging, that she had been a virgin until her sexual acts with the defendant. We conclude that the trial court improperly restricted the defendant from attempting to prove the unelaborated fact that she had made this false claim.[4]

We do not hold that a false claim of virginity by the prosecuting witness should always be a subject of proof in a sexual offense trial. We contrast this case with *State v. Cook*, 151 Ariz. 205, 726 P.2d 621 (App.1986). There a sixty-five-year-old sexual assault victim told an emergency room physician that she had not had previous sexual relations for several years. Later, at a pre-trial interview, she told defendant's counsel that she had lived with a man six or seven months before the assault. *Id.* at 206, 726 P.2d at 622. Defense counsel attempted to introduce both statements to challenge her credibility under Rule 608(b), Arizona Rules of Evidence. Division Two of our court held that the evidence was properly excluded:

> Considering the fact that the falsehood told to the doctor had nothing to do with the doctor's examination, was wholly unrelated to the issues in this case and that its admission together with a statement made to defense counsel would circumvent the *Pope* case, the trial court did not abuse its discretion in refusing to admit the testimony.

*Id.*

We agree with *State v. Cook*, but distinguish the issue in this case. In *Cook*, the

falsehood was wholly collateral because the defendant was not claiming as a defense that the victim had fabricated her story. He merely wanted to use the falsehood to impeach her credibility. In this case, by contrast, one line of defense was that the prosecuting witness had fabricated the accusation against defendant to shift blame for her pregnancy to an older "seducer." It would have been probative to this theory if in fact she falsely claimed while shaping her accusation that her first sexual intercourse was with defendant. This could have been construed as one false element of an overall blame-shifting fabrication. Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable than it would otherwise be. *State v. Adamson*, 136 Ariz. 250, 259, 665 P.2d 972, 981 (1983) *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). This evidence met that test.

The separate question follows whether the probative value of the evidence outweighed its prejudicial quality. Rule 403, Arizona Rules of Evidence. Although review of a trial court's decision to exclude evidence is deferential, "[t]he appellate court 'must look at the evidence in a light most favorable to its *proponent,* maximizing its probative value and minimizing its prejudicial effect.'" *United States v. Jamil*, 707 F.2d 638, 642 (2d Cir.1983), quoting *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.1979) *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979) (emphasis added). *See also* 1 J. Weinstein and M. Berger, *Weinstein's Evidence* § 403[03] at 403–447 to 403–450 (1985) (It serves the spirit of the rules of evidence "to view both probative force and prejudice most favorably towards the proponent" because "the thrust of the federal

cy at trial or on appeal. We note that the Sixth Circuit has concluded in an analogous case that this type of evidence should be excluded. *United States v. Cardinal*, 782 F.2d 34, 36 (6th Cir. 1986) *cert. denied*, 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986). *But see Pope*, 113 Ariz. at 29, 545 P.2d at 953 ("[E]vidence concerning unchastity would be admissible in conjunction with an effort by the defense to show that the

complaining witness has made unsubstantiated charges of rape in the past.")

4. The falsity of such a claim could apparently be proven without detail, given S.'s acknowledgement at pretrial interview that she had had sexual relations before meeting the defendant.

rules[5] favors admissibility.")

In discussing probative value and prejudice we confine our focus to the question whether defendant should have been able to prove the unelaborated fact of the false claim. We distinguish evidence of the false claim of virginity itself from evidence of specific instances of sexual relations with others. The latter category of evidence was clearly excludable, as indicated in our previous discussion of defendant's offer of proof. The former, however, should have been admitted.

*State v. Oliver* exemplifies the balanced exclusionary application of Rule 403 to matters of this nature. There the defendant, accused of sexual molestation, asserted the defense of fabrication and attempted to support it by proving his accuser's prior sexual history "to establish that she had independent knowledge of the physiological aspects of the alleged molestation." 158 Ariz. at 29, 760 P.2d at 1078. The supreme court affirmed the careful balance that the trial court struck, which was to permit evidence that the defendant's accuser was familiar from past experience with seminal fluid and ejaculation, but to preclude evidence of the details of that experience. *Id.* at 29–30, 760 P.2d at 1078–79.

Here, we believe, a similar balance should have been stricken by permitting defendant to prove that S. had falsely claimed during the series of interviews that followed the discovery of her condition that she had ended her virginity with defendant. Proof so restricted, in our view, would be adequately relieved of its prejudicial elements, entitling the defendant to its probative potential.

### 5. Summary

We summarize this discussion of defendant's attempt to submit evidence of S.'s prior sexual conduct as follows:

a. It has been impermissible since *Pope*—and should have been impermissible long before—to submit evidence of a victim's sexual history to impeach veracity.

The trial court was properly vigilant against any such effort in this case.

b. Whether S. was or was not a virgin when she met defendant is irrelevant in and of itself, as is the extent of any sexual experience she had had. One need not be a virgin or a sexual novice to be the victim of a sexual crime.

c. It was relevant, however, if true, that S., when shaping her accusation against defendant, falsely claimed that she was a virgin until she met him. While in some cases such evidence might be too collateral for admission, in this case it bore on defendant's theory of fabrication. Thus defendant should have been permitted to prove this unelaborated fact, without inquiring into details of past sexual conduct.

d. S.'s sexual relations with others were only relevant to the extent that they occurred at or about the time of conception. The defendant should have been permitted cross-examination in this area, subject to appropriate temporal limitations.

e. The defendant was appropriately precluded from exploring the evidence of sexual activity described in his offer of proof. The 1983 episode and the 1985 venereal testing were temporally unrelated to the period of conception, and the offer of proof was too unspecific as to the alleged sexual contact with Simmons to relate it to the period of possible conception.

We turn to the remaining issues on appeal.

### C. *Evidence of Defendant's Prior Bad Acts*

#### 1. Waiver

■ In the indictment, defendant was charged with sexual conduct with S. on or about August 23, 1985. At trial, S. testified that August 23 was the *last* time she had intercourse with the defendant; she claimed four specific previous episodes of intercourse with him in May, June, and July. Defendant argues that the trial judge should have granted his motion to prevent the accused from relating these

---

**5.** Arizona's Rule 403 is identical to its federal counterpart.

prior acts, claiming that the testimony was both irrelevant and prejudicial.

We need not discuss the merits of this argument [6] because we find that defendant waived it at trial:

DEFENSE COUNSEL: In reviewing this matter and some other records yesterday, I found a case [that says] evidence of prior bad acts can come before the trier of fact.

THE COURT: Thank you, Mr. Hurst. Then [defendant's motion in limine] is moot?

DEFENSE COUNSEL: Yes.

PROSECUTOR: Then I take it, should the victim choose to, she could testify as to other acts of sexual intercourse with the defendant.

THE COURT: That's what Mr. Hurst just said the case says.

DEFENSE COUNSEL: Thank you, Your Honor.

We conclude from this exchange that defense counsel renounced his objection to S.'s testimony about prior encounters with the defendant. This was equivalent to a failure to object, which waived this issue for appeal. *State v. Hunt*, 118 Ariz. 431, 434, 577 P.2d 717, 720 (1978).

### 2. Rule 15.1

Defendant also claims that the prosecution violated Rule 15.1, Arizona Rules of Criminal Procedure, because the details of the prior sexual contacts were not properly disclosed before trial. It is unnecessary for us to address this issue because we reverse on other grounds. The defendant will have sufficient notice of this evidence upon retrial.

## IV. CONCLUSION

For the foregoing reasons, defendant's conviction is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

KLEINSCHMIDT, P.J., and GRANT, J., concur.

---

6. However, we note that the weight of authority is contrary to the defendant's position. *See, e.g., State v. Garner*, 116 Ariz. 443, 569 P.2d 1341 (1977); *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973); *State v. Beck*, 151 Ariz. 130, 726 P.2d 227 (App.1986); *State v. Spence*, 146 Ariz. 142, 704 P.2d 272 (App.1985). *See also* Note, *Admissibility of Evidence of Prior Bad Acts in Criminal Prosecutions*, 20 Ariz.L.Rev. 1039 (1978); Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz.L.Rev. 212 (1965); Comment, *Admitting Evidence of Prior Sex Offenses—A New Trend*, 58 Nw. U.L.Rev. 108 (1963).