IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Petitioner*,

*v.*

JOSE G. HERNANDEZ, *Respondent*.

No. 1 CA-SA 25-0288
FILED 03-05-2026
AMENDED PER ORDER FILED 03-05-2026

Petition for Special Action from the Superior Court in Maricopa County
No. CR2023-007600-001
The Honorable Joshua D. Rogers, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Johnny Jacquez, Quinton S. Gregory
*Counsel for Petitioner*

Maricopa County Public Defender's Office, Phoenix
By Meghan White
*Counsel for Respondent*

_____

**OPINION**

_____

Judge Daniel J. Kiley delivered the opinion of the Court, in which Judge Brian Y. Furuya joined. Presiding Judge Angela K. Paton specially concurred.

_____

**K I L E Y**, Judge:

¶1        The Arizona Rape Shield Law, A.R.S. § 13-1421, generally prohibits the admission of evidence of the victim's prior sexual conduct at a trial for a sex offense. The statute contains a number of exceptions, however, including one for "[e]vidence of specific instances of sexual activity showing the source or origin of . . . trauma." A.R.S. § 13-1421(A)(2). The parties to this special action agree that this exception applies to physical trauma exhibited by the victim, but dispute whether it applies to mental or emotional trauma as well. Defendant Jose Hernandez argued in the superior court that it does, and the court agreed. Because we conclude otherwise, we accept jurisdiction and grant relief.

## FACTS AND PROCEDURAL HISTORY

¶2        Hernandez is charged with multiple felonies in the underlying case, including three allegedly committed against his niece "Brianna" (a pseudonym): two counts of molestation of a child, class 2 felonies and Dangerous Crimes Against Children in violation of A.R.S. §§ 13-705 and -1410, and one count of attempted molestation of a child, a class 3 felony and Dangerous Crime Against Children in violation of A.R.S. §§ 13-705, -1001, and -1410.

¶3        During her forensic interview, Brianna disclosed that she was not only molested by Hernandez, but was also victimized by two other family members on other occasions. One of these family members molested her, she reported, while, on a different occasion, the other attempted to show her pornographic material.

¶4        Hernandez moved under A.R.S. § 13-1421 to admit evidence of Brianna's allegations against the two other family members, asserting that such evidence was relevant to the accuracy of her memory of the

2

charged crimes and her identification of the perpetrator.[1] Asserting that he and the two other family members are "incredibly similar looking[,]" Hernandez stated that he intends to argue at trial that Brianna's identification of him as the perpetrator of the charged crimes resulted from "confusion" stemming from her victimization by other family members. Although none of the subsections of Section 13-1421 list "confusion as to the identity of the perpetrator" as an exception to the Rape Shield Law, Hernandez insisted that Brianna's purported "confusion" fell within the scope of Section 13-1421(A)(2) ("Subsection (A)(2)"), which authorizes the admission of "[e]vidence of specific instances of sexual activity showing the source or origin of . . . trauma." A.R.S. § 13-1421(A)(2). According to Hernandez, Brianna's victimization by others offers an "alternate explanation" for her "mental sexual trauma" and constitutes the "source" of her purported "confusion" about the perpetrator's identity.

¶5        The State opposed Hernandez's motion, asserting, *inter alia*, that the "trauma" exception set forth in Subsection (A)(2) applies only to "physical manifestations of specific sexual activity[,]" not the victim's "mental or emotional trauma[.]"

¶6        The superior court granted Hernandez's motion, finding that Brianna's report that she was victimized by two other family members supported Hernandez's misidentification defense because it "goes to the issue of who committed the alleged abuse and whether the alleged abuse is remembered correctly[.]" Holding that the word "trauma" as used in Subsection (A)(2) is not limited to physical trauma, the court found that evidence of Brianna's victimization by others supported Hernandez's claim that the "other two men[,]" and not Hernandez, "caused the trauma" that, in turn, "caused [Brianna] to not remember the incidents correctly." The State seeks relief from this order by special action. *See* Ariz. R.P. Spec. Act. 11.

## DISCUSSION

¶7        The State asserts that relief by special action is warranted because the superior court erred in interpreting Subsection (A)(2) "to include purely emotional harm[.]" "[A]ll child victims of sexual abuse" suffer emotional harm, the State argues, and the court's construction of Subsection (A)(2) improperly allows Hernandez to use Brianna's "general

---

[1] Nonconsensual sexual acts committed against a victim are considered the victim's "sexual conduct" for purposes of the Rape Shield Law. *See State v. Dixon*, 226 Ariz. 545, 554, ¶ 47 (2011).

and nonspecific reports of emotional distress" to "evade" Section 13-1421's restrictions on the admission of evidence of "a victim's sexual history[.]" In response, Hernandez argues that the superior court correctly determined that "psychological trauma" falls within Subsection (A)(2)'s "exception to the rape shield[.]"

¶8            The exercise of special action jurisdiction, though "highly discretionary," *Yauck v. West Town Bank & Trust*, 259 Ariz. 481, 485, ¶ 12 (App. 2025) (citation omitted), may be appropriate if the aggrieved party has no "equally plain, speedy and adequate" remedy by appeal, Ariz. R.P. Spec. Act. 2(b)(2); *State v. Lee*, 226 Ariz. 234, 236, ¶ 6 (App. 2011) (accepting special action jurisdiction because a special action was "the only means by which relief may be obtained"). As this Court has long recognized, "accepting special action jurisdiction is particularly appropriate where the welfare of children is involved and the harm complained of can only be prevented by resolution before an appeal." *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 303, ¶ 6 (App. 2014). Further, a special action is a proper vehicle to challenge a ruling compelling the disclosure of information that is alleged to be protected. *See* Ariz. R.P. Spec. Act. 12(b)(2) (identifying "whether the petition asks the court to resolve questions . . . of legal or evidentiary privileges" as a factor supporting special action jurisdiction); *cf. Arpaio v. Figueroa*, 229 Ariz. 444, 446, ¶ 5 (App. 2012) ("When the subject of [a] discovery order is privileged or confidential material, it is particularly appropriate to accept [special action] jurisdiction." (citation modified)). Finally, because the interpretation of statutes and court rules is a question of law reviewed *de novo*, cases presenting such issues are "particularly appropriate for review by special action." *Yauck*, 259 Ariz. at 485, ¶ 12 (citation omitted). For these reasons, we accept special action jurisdiction here.

¶9            The Arizona Rape Shield Law generally prohibits the admission of evidence of the victim's prior sexual conduct in prosecutions for sexual offenses. A.R.S. § 13-1421.[2] The statute establishes certain

---

[2] The Arizona Rape Shield Law provides as follows:

A. Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter, § 13-3212 or chapter 35.1 of this title. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case

exceptions to this general rule, however, including an exception for "[e]vidence of specific instances of [the victim's] sexual activity showing the source or origin of semen, pregnancy, disease or trauma." A.R.S. § 13-1421(A)(2). In interpreting "trauma" as used in Subsection (A)(2) to encompass emotional trauma, the superior court stated that "the plain language of the statute" does not "limit[]" the term to "physical injury." The court added that the term "trauma" "as used in connection [with] sexual assault" has "long been . . . understood as encompassing mental and emotional harm[,]" noting, for example, that the Arizona Supreme Court used the label "rape trauma syndrome" to refer to "the recurring pattern of emotional distress in rape victims." *State v. Huey*, 145 Ariz. 59, 62 (1985). To

---

and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence is one of the following:

1. Evidence of the victim's past sexual conduct with the defendant.

2. Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.

3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

4. Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

5. Evidence of false allegations of sexual misconduct made by the victim against others.

B. Evidence described in subsection A of this section shall not be referred to in any statements to a jury or introduced at trial without a court order after a hearing on written motions is held to determine the admissibility of the evidence. If new information is discovered during the course of the trial that may make the evidence described in subsection A of this section admissible, the court may hold a hearing to determine the admissibility of the evidence under subsection A of this section. The standard for admissibility of evidence under subsection A of this section is by clear and convincing evidence.

A.R.S. § 13-1421 (footnote omitted).

limit the term as used in Subsection (A)(2) to physical trauma, the court concluded, "would be unreasonable and illogical[.]" *Id.*

¶10 Although the word "trauma," by itself, could reasonably be understood to refer to emotional as well as physical trauma, statutory terms "should be read in context in determining their meaning." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017); *see also Huber v. Ariz. Naturopathic Physicians Med. Bd.*, __ Ariz. __, __, ¶ 12, 579 P.3d 1249, 1253 (App. 2025) ("[F]ocusing on text does not mean interpreting it hyperliterally or in a vacuum—context matters."). As the Arizona Supreme Court has recognized, statutory terms "draw their meaning from the context in which they are used." *DBT Yuma, L.L.C. v. Yuma Cnty. Airport Auth.*, 238 Ariz. 394, 396, ¶ 10 (2015); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167, 180 (2012) ("Context is a primary determinant of meaning[,]" and "provisions of a text should be interpreted in a way that renders them compatible[.]"). Relatedly, the associated-words canon known as *noscitur a sociis* provides that "a word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used[.]" *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211, ¶ 13 (2019); *see also United States v. Williams*, 553 U.S. 285, 294 (2008) ("[T]he commonsense canon of *noscitur a sociis* . . . counsels that a word is given more precise content by the neighboring words with which it is associated."). Adherence to *noscitur a sociis* "'avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words,' thus avoiding giving legislative acts 'unintended breadth.'" *In re Drummond*, 257 Ariz. 15, 21, ¶ 23 (2024) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)).

¶11 Subsection (A)(2) identifies four facts or circumstances whose presence may permit inquiry into specific instances of the victim's sexual conduct: semen, pregnancy, disease, and trauma. The first three — semen, pregnancy, and disease — share a significant commonality: the presence of each constitutes physical or biological evidence of sexual conduct. To interpret the fourth in a like manner — to interpret "trauma," in other words, to mean physical injury resulting from sexual conduct — is consistent with the context in which the term is used in Subsection (A)(2) and with the canon of *noscitur a sociis*. *City of Surprise*, 246 Ariz. at 211, ¶ 13 (applying *noscitur a sociis* "is appropriate when several terms are associated in a context suggesting the terms have some quality in common"); *see also Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").

¶12          If ambiguity remains after considering the terms of a statute in context, a court turns to secondary interpretation methods, which include looking to the statute's "spirit and purpose[.]" *Drummond*, 257 Ariz. at 18, ¶ 5. The purpose of the Rape Shield Law is "to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning any past sexual behavior." *State v. Gilfillan*, 196 Ariz. 396, 400-01, ¶ 15 (App. 2000), *abrogated on other grounds by State v. Carson*, 243 Ariz. 463, 465-66, ¶ 10 (2018). When faced with two possible constructions of the Rape Shield Law, therefore, the one that provides greater protection to victims is preferred. That, too, counsels in favor of interpreting the term narrowly to mean only trauma of a physical nature, rather than encompassing non-physical trauma as well.

¶13          A court may also look to an ambiguous statute's "historical background," *Drummond*, 257 Ariz. at 18, ¶ 5, and, here, the history of the Rape Shield Law is illuminating.

¶14          At common law, evidence of a sexual assault victim's sexual conduct was generally admissible at trial to attack the victim's credibility and to bolster a consent defense. According to the often-quoted reasoning of the New York Court of Appeals in *People v. Abbot*, 19 Wend. 192 (N.Y. 1838), the victim's "chastity" was relevant because "assent" may be "more readily infer[red]" on the part of "the practised [*sic*] Messalina, in loose attire, than in the reserved and virtuous Lucretia[.]" *Id.* at 194-95; *accord People v. Johnson*, 39 P. 622, 623 (Cal. 1895) ("[U]pon the authority of many text-writers and cases, we have no doubt but that the general reputation of a prosecutrix for unchastity is proper and legal evidence."). For a long time, Arizona courts shared this view. *See State v. Wood*, 59 Ariz. 48, 52 (1942) ("[C]ommon experience teaches us that the woman who has once departed from the paths of virtue is far more apt to consent to another lapse than is the one who has never stepped aside from that path.").

¶15          Over time, however, judges and commentators came to question the "logical underpinnings" of the common law rule, *Commonwealth v. Strube*, 418 A.2d 365, 369 (Pa. Super. 1979), and to decry the "character assassination" of the victim that so often resulted, *Commonwealth v. Manning*, 328 N.E.2d 496, 501 (Mass. 1975) (Braucher, J., dissenting); *see also* Harriet R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 764 (1986) (quoting Congresswoman Elizabeth Holtzman's statement on the House floor that "rape trials" often "become inquisitions into the victim's morality, not trials of the defendant's innocence or guilt."). In urging that the common law rule be jettisoned, some commentators went so far as to

propose a complete ban on the admission of "evidence of unchastity [in] rape trials[.]" Camille E. LeGrand, Comment, *Rape and Rape Laws: Sexism in Society and Law*, 61 Cal. L. Rev. 919, 939 (1973).

¶16        The Michigan legislature enacted the nation's first "rape shield" statute in 1974. Galvin, *Shielding Rape Victims*, 70 Minn. L. Rev. at 765 n.3; *see* Act of Aug. 12, 1974, 1974 Mich. Pub. Acts 1025 (codified as amended as Mich. Comp. Laws Ann. § 750.520j). Four years later, the United States Congress amended the federal evidence rules to establish a rape shield in Federal Rule of Evidence 412, *see* Privacy Protection for Rape Victims Act of 1978, 92 Stat. 2046 (1978), and within two decades, nearly all jurisdictions adopted rape shield protections by statute, court rule, or caselaw. Galvin, *Shielding Rape Victims*, 70 Minn. L. Rev. at 765 n.3.

¶17        No jurisdiction, however, adopted a blanket rule barring admission of evidence of a victim's sexual conduct in all cases. On the contrary, a widespread recognition that a defendant's constitutional rights to present a defense and to confront witnesses may overcome a victim's interest in shielding personal matters from public view led to the establishment of exceptions to even the most restrictive rape shield laws. Galvin, *Shielding Rape Victims*, 70 Minn. L. Rev. at 773, 813-14; *see also California v. Trombetta*, 467 U.S. 479, 485 (1984) (noting that due process "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense").

¶18        As the United States Supreme Court made clear in *Chambers v. Mississippi*, 410 U.S. 284 (1973), evidentiary rules that prevent a defendant from showing that someone else committed the crime may violate the defendant's constitutional right to present a defense. *See id.* at 302 (reversing conviction of defendant who was convicted of murder after the trial court, applying state evidentiary rules, barred him from presenting evidence that another person confessed to the crime; "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."). Consistent with the rule established in *Chambers*, courts and commentators generally agreed that a defendant must be permitted to introduce evidence of the victim's sexual conduct when the evidence would tend to exonerate the defendant by showing that physical evidence of the alleged assault was attributable to the victim's sexual activity with someone else. As the Michigan Court of Appeals recognized,

> It is well settled that where the prosecution substantiates its
> case by demonstrating a physical condition of the

> complainant from which the jury might infer the occurrence of a sexual act, the defendant must be permitted to meet that evidence with proof of the complainant's prior sexual activity tending to show that another person might have been responsible for her condition.

*People v. Mikula*, 269 N.W.2d 195, 198 (Mich. App. 1978); *see also People v. Martinez*, 634 P.2d 26, 30-31 (Colo. 1981) (reversing defendant's conviction for sexual assault and holding that trial court erred in precluding defendant, who denied sexual contact with the victim, from presenting evidence that victim had consensual sexual intercourse "with someone other than the defendant" on the day of the alleged assault; "Evidence of a prior sexual act with another man which could explain the presence of semen in the prosecutrix's vaginal tract is relevant in that it tends to render more probable the inference that defendant did not have sexual intercourse with the prosecutrix."); *State v. LaClair*, 433 A.2d 1326, 1329-30 (N.H. 1981) (reversing defendant's conviction for sexual assault and holding that trial court erred in precluding defendant, who denied sexual contact with the victim, from cross-examining her about sexual activities with others "on the day preceding the alleged rape" because the evidence could have "accounted for the presence of sperm in her vagina"); *see also* J. Alexander Tanford & Anthony J. Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U. Pa. L. Rev. 544, 584 (1980) ("A rape complainant's testimony is usually corroborated by physical evidence—the presence of semen, resulting disease, or pregnancy. Often forcible rape cases also include testimony about the infliction and extent of physical injury to the victim. Proof that another man engaged in sexual intercourse with the complainant at or near the time of the alleged rape provides an alternative source of the physical evidence and is therefore obviously relevant. For this reason, many states permit the defendant to introduce evidence that someone other than himself was responsible" and citing cases).

¶19 Citing the trend in other jurisdictions as well as a review of empirical data, the Arizona Supreme Court in *State ex rel. Pope v. Superior Court*, 113 Ariz. 22 (1976), abandoned the common law rule and held that evidence of a victim's prior sexual conduct was inadmissible to prove consent or impeach a victim's credibility in a sexual assault case. *Id.* at 29. The *Pope* court recognized certain exceptions to this general rule of inadmissibility, however, including an exception for evidence of the victim's sexual conduct that "directly refutes physical or scientific evidence, such as the victim['s] alleged loss of virginity" or "the origin of semen, disease or pregnancy." *Id.* The *Pope* court recognized, in other words, an exception to the rape shield for evidence that allows the defendant to

exonerate himself by showing that physical evidence of sexual conduct was caused by the victim's sexual activity with someone else. *See id.* Our supreme court later expanded on *Pope* by extending its holding "to child molestation cases." *State v. Oliver*, 158 Ariz. 22, 27 (1988).

¶20 In *State v. Castro*, 163 Ariz. 465 (App. 1989), this Court applied the "directly refutes" exception to the rape shield recognized in *Pope*. In *Castro*, the defendant was charged with sexual conduct with a minor after 17-year-old "S.," who became pregnant and had an abortion, identified him as the father. *Id.* at 467. Denying any sexual contact with S., the defendant sought to cross-examine her at trial about sexual contact she had with others at the time she became pregnant. *Id.* The trial court precluded the defendant from inquiring into her sexual contact with others, and the jury convicted him. *Id.* On appeal, this Court reversed, holding that evidence that "the prosecuting witness . . . had been sexually involved with others at the time she conceived . . . would have directly refuted the implication that the defendant was the only possible source of S.'s pregnancy." *Id.* at 471. Evidence that S. became pregnant as a result of sexual activity with someone other than the defendant, the *Castro* court held, falls outside the scope of the rape shield recognized in *Pope. Id.*

¶21 In 1998, the Arizona legislature largely codified the holding of *Pope* and its progeny by enacting Section 13-1421. *See Gilfillan*, 196 Ariz. at 401, ¶ 16 & n.3. Section 13-1421's history indicates that the exception created in Subsection (A)(2) was intended to enable a defendant to exonerate himself by presenting evidence to show that someone else was responsible for the physical evidence of sexual conduct by the victim. If, for example, the complaining witness alleges that she became pregnant as a result of a sexual assault by the defendant, Subsection (A)(2) may (assuming the defendant satisfies the notice and other requirements of Section 13-1421) permit the defendant to refute the allegation with evidence that she became pregnant as a result of sexual activity with someone else. *Castro*, 163 Ariz. at 471. Similarly, if the complaining witness alleges that the defendant inflicted bruises or other physical trauma during the course of a sexual assault, Subsection (A)(2) may (if the other statutory requirements are satisfied) permit the defendant to refute the accusation, thereby exonerating himself, by presenting evidence that she sustained the physical trauma as a result of sexual activity with someone else. *Cf. State v. Pogue*, 1 CA-CR 20-0346, 2021 WL 3160856 at *3, ¶ 16 (Ariz. App. July 27, 2021) (mem. decision) (affirming preclusion of evidence of victim's sexual history under the Rape Shield Law in part because the State did not contend that the defendant "was the source of physical or biological signs of sexual activity").

¶22 Unlike semen, pregnancy, disease, or physical trauma, however, mental or emotional trauma is not traceable to a single cause or a particular event. On the contrary, multiple events and circumstances may, and often do, contribute to mental or emotional trauma, and the occurrence of one traumatizing event in a person's life does not make the occurrence of another any more or less likely. Here, for example, evidence that Brianna suffered mental or emotional trauma as a result of being victimized by other family members does not tend to exclude other potential sources of trauma, and so would not exonerate Hernandez of the charged offense. Because evidence that Brianna was victimized by other family members and suffered emotional trauma as a result does not "directly refute" evidence that she was victimized by Hernandez, evidence that she was victimized by other family members is not admissible. *See Pope*, 113 Ariz. at 29.

¶23 In support of his position, Hernandez cites *State v. Lujan*, 192 Ariz. 448 (1998), in which the Arizona Supreme Court reversed Lujan's conviction for molesting a nine-year-old girl based on the trial court's preclusion of evidence that she had previously "been molested by at least two other men." 192 Ariz. at 450, 454, ¶¶ 2-3, 20. Noting that Lujan claimed that he and the child had merely been playfully roughhousing, the *Lujan* court held that the evidence of the prior molestations, along with Lujan's proffered expert testimony, was admissible to support the defense that the child's sexual victimization by other men led her to "misperceive" Lujan's "innocent, non-sexual touch." *Id.* at 450, 454, ¶¶ 4, 20. Hernandez maintains that *Lujan* supports his position that the admissibility of evidence of a victim's "other past sexual abuse" does not depend on the existence of "physical evidence" of abuse.

¶24 Because *Lujan* was decided before Section 13-1421 went into effect, "*Lujan* is instructive only to the extent it is consistent with the plain wording of the rape shield statute." *State v. Gollihar*, 1 CA-CR 14-0757, 2015 WL 4760535 at *2, ¶ 12 (Ariz. App. Aug. 13, 2015) (mem. decision). But *Lujan* is inapposite in any event, since the defendant in that case did not, as Hernandez does here, contend that the child's prior molestations were relevant to establishing the source of trauma.

¶25 We hold that the term "trauma" as used in Section 13-1421(A)(2) means only physical injury, not emotional or psychological harm. Evidence that a victim has suffered emotional or psychological trauma does not, therefore, trigger Subsection (A)(2)'s exception to the Rape Shield Law, or otherwise permit inquiry into the victim's prior sexual conduct.

¶26            In the alternative, Hernandez argues that evidence that Brianna sustained mental trauma as a result of her victimization by other family members is admissible "on due process grounds." Because Brianna's testimony "is the only evidence" against him, he asserts, his fate at trial hinges on her "identification of her abuser and her memory of the abuse[.]" Under the circumstances, he concludes, his constitutional right "to present a complete defense and cross examine his accuser" requires that he be "allowed to inquire into factors[,]" including other "instances of sexual abuse," that "can impact the accuracy of [Brianna's] memory[.]"

¶27            As noted above, the exclusion of relevant evidence may run afoul of a defendant's constitutional right to present a complete defense. *See State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 236 (App. 1992) (noting that "exclu[sion]" of "essential evidence" that "preclud[es] a defendant from presenting a theory of defense" violates "the defendant's right to due process"); *Castro,* 163 Ariz. at 470 (noting that a court endeavoring to "reduce the trauma and humiliation of the criminal process for the victims of sexual crimes . . . must also meet its constitutional obligation to preserve the defendant's rights to cross-examine and defend"). But the superior court has not addressed this alternative argument, and nothing in the limited record before us enables us to address it in the first instance.[3] We therefore decline to consider Hernandez's alternative argument, and offer no opinion on whether the proffered evidence is admissible on constitutional grounds despite the bar of the Rape Shield Law.

**CONCLUSION**

¶28            We accept jurisdiction and grant relief.

---

[3] Although Hernandez asserts that the State's expert witness is expected "to testify to how trauma impacts memory[,]" the State disputes Hernandez's "predictions" about "what the State's expert will say[.]" The present record gives us no way of knowing who is right.

**P A T O N**, Judge, specially concurring:

**¶29** I join paragraphs 1-11 and 22-28 of the majority's decision and concur in its outcome. It is not necessary to reach the secondary statutory interpretation methods the majority employs when, as here, the statute's text is unambiguous, and the majority does not expressly say the statute is ambiguous. *See Pima Cnty. v. State*, 258 Ariz. 11, 15-16, ¶ 23 (2024) ("Unless there is ambiguity in a provision's meaning, or a provision's plain meaning would produce absurd results, this Court's inquiry 'begins and ends with the plain meaning of the legislature's chosen words, read within the "overall statutory context."'" (quoting *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021)); *see also State v. Serrato*, 259 Ariz. 493, 496, ¶ 9 (2025) ("If a statute's text is clear and unambiguous, it controls unless it results in an absurdity or a constitutional violation."). A statute is not ambiguous because parties or courts disagree about its meaning; rather, a statute is ambiguous when, in context, "it can be reasonably read in two ways." *See Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142-43, ¶ 17 (2024) (quoting *State v. Salazar-Mercado*, 234 Ariz. 590, 592, ¶ 5 (2014)).

**¶30** The term "trauma" in Section 13-1421(A)(2) is unambiguous for the reasons the majority provides in paragraphs 10, 11, and 22: under the *noscitur a sociis* canon, "a word's meaning cannot be determined in isolation [] but must be drawn from the context in which it is used." *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211, ¶ 13 (2019). This canon "is appropriate when several terms are associated in a context suggesting the terms have some quality in common." *Id.* The term "trauma" sequentially follows other terms describing physical evidence that sexual contact occurred. Psychological trauma is distinct from the other terms in the statute because psychological trauma is "not traceable to a single cause or a particular event." Op. ¶ 22. Therefore, "trauma" under Section 13-1421(A)(2) unambiguously means physical trauma resulting from sexual contact. We therefore need not wade into the history of the rape shield law to resolve this issue.

